# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 13-2694

WILLIE C. WAGES, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued December 12, 2014                          Decided January 23, 2015)

*Robert V. Chisholm*, of Providence, Rhode Island, for the appellant. *Nicholas L. Phinney*, of Providence, Rhode Island, was on the brief for the appellant.

*Emily Purcell*, with whom *Will A. Gunn,* General Counsel; *Mary Ann Flynn*, Assistant General Counsel; *Gayle Strommen*, Deputy Assistant General Counsel; and *Tamika Springs*, were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, *Chief Judge*, and MOORMAN and PIETSCH, *Judges.*

PER CURIAM.  KASOLD, *Chief Judge*, filed a concurring opinion.

PER CURIAM:  Veteran Willie C. Wages appeals through counsel a July 26, 2013, Board of Veterans' Appeals (Board) decision that denied his claim for entitlement to a total disability rating based on individual unemployability (TDIU) prior to December 11, 2009, to include on an extraschedular basis.  Mr. Wages argues that the Board provided inadequate reasons or bases for its finding that he could secure and follow a substantially gainful occupation, and erred in relying on the decision of the Director, Compensation and Pension Service (Director), as evidence.  Initially arguing that the Director's decision was evidence, the Secretary now contends that the Director's decision is not evidence, but is a decision binding on the Board once the Board determines that the Director had the correct facts when rendering his decision.  Because this case involves an issue of first impression, panel decision is warranted.  *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990).  For the reasons stated below, we find the Secretary's contention to be without merit; the decision on appeal will be set aside and remanded for further adjudication.

## I. FACTS

Mr. Wages has numerous service-connected disabilities resulting in a noncompensable rating from May 1, 1981, through July 22, 2003, a 40% rating from July 23, 2003, through December 21, 2006, a 50% rating from December 22, 2006, through December 10, 2009, and a 90% rating on and after December 11, 2009. In a June 2012 decision, the Board found that Mr. Wages met the schedular requirements for TDIU as of December 11, 2009, and further found that he had been unable to secure or follow a substantially gainful occupation since that time; accordingly, he was awarded TDIU, effective December 11, 2009. *See* 38 C.F.R. § 4.16(a) (2014) (schedular requirements for TDIU).

The June 2012 Board also found that "medical and lay evidence suggests that the Veteran was unable to work prior to December 11, 2009[,] due to service-connected disabilities," but the Board concluded that it lacked the authority to award TDIU for this period, because Mr. Wages did not meet the schedular criteria for TDIU. Record (R.) at 70. Specifically, the Board cited *Bowling v. Principi*, 15 Vet. App. 1 (2001), for the proposition that it had "no authority to assign a TDIU rating under 38 C.F.R. § 4.16(b) and may only refer the claim to the Director, Compensation and Pension Service[,] for extraschedular consideration." *Id.* Accordingly, the Board remanded the issue of Mr. Wages's entitlement to TDIU prior to December 11, 2009, specifically instructing that Mr. Wages's claim for TDIU be submitted to the Director for consideration under 38 C.F.R. § 4.16(b).

On remand, the issue was referred to the Director, who denied extraschedular TDIU. Specifically, the Director reviewed the pertinent medical evidence, and noted that a December 8, 2009, independent medical opinion addressed only Mr. Wages's "inability to perform strenuous work, and did not discuss his ability to perform a sedentary occupation. Therefore, it would not be unreasonable to conclude that [Mr. Wages] is capable of performing a non-strenuous or sedentary occupation." R. at 25. The Director also noted that the "record presents no evidence" that Mr. Wages's service-connected disabilities rendered him unable to secure and follow any substantially gainful occupation prior to December 11, 2009. *Id.* The VA regional office (RO) implemented the Director's denial in a December 2012 Supplemental Statement of the Case (SSOC), which Mr. Wages timely appealed.

2

In the decision on appeal, the Board denied entitlement to extraschedular TDIU prior to December 11, 2009. The Board relied, in part, on the Director's opinion for its finding that Mr. Wages was not precluded from securing and following substantially gainful sedentary employment due to his service-connected disabilities prior to December 11, 2009, and that extraschedular TDIU therefore must be denied. The Board concluded:

> [T]he evidence shows that prior to December 11, 2009, [Mr. Wages] had difficulty working due to his service-connected disabilities. However, the April 2007 and July 2007 VA examinations, the December 2009 private opinion, and the October 2012 opinion from the Director [ ], the most probative and complete medical evidence, reflect that [Mr. Wages's] service-connected disabilities did not preclude him from obtaining non-strenuous or sedentary employment.

R. at 13.

## II. THE PARTIES' ARGUMENTS

In his initial brief, Mr. Wages contended that the Board erred in relying on the Director's decision as evidence against his claim. Mr. Wages also contended that the Board erred in – and provided inadequate reasons or bases for – its finding that he was capable of sedentary work without explaining how his vocational and educational experience provided him with the necessary skills for sedentary work. In response to an October 9, 2014, order of the Court requesting the parties to provide supplemental memoranda addressing the Board's standard of review of the Director's decision under § 4.16(b), including whether the Board must defer to the Director's decision, Mr. Wages argues that the Board owes no deference to the Director, and that the Board must review the Director's decision de novo to determine whether Mr. Wages is entitled to TDIU on an extraschedular basis under § 4.16(b).

Although the Secretary initially argued that the Director's decision was indeed evidence upon which the Board could rely, the Secretary now contends, in response to the above-mentioned order, that the Director's decision is not evidence. Rather, the Secretary now argues that, although the Board may review the factual basis of the Director's decision to ensure that it is accurate and complete, § 4.16(b) operates to divest the Board of the authority to overturn a Director's decision because determinations under § 4.16(b) are policy decisions committed to the Director's sole discretion. A contrary view, the Secretary argues, would render the referral process in § 4.16(b)

3

meaningless, time consuming, and unnecessary.

### III. ANALYSIS

#### A. 38 C.F.R. § 4.16(b) – Extraschedular TDIU Referral

Subsection (a) of § 4.16 authorizes the award of a total disability rating where a claimant's service-connected disability is rated less than total but the claimant is nevertheless unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities. To be considered for TDIU under § 4.16(a), there must be some indication that a claimant is unemployable due to his service-connected disabilities, *see Comer v. Peake*, 552 F.3d 1362, 1367 (Fed. Cir. 2009) (TDIU is raised "whenever a pro se veteran, who presents cogent evidence of unemployability, seeks to obtain a higher disability rating"), and he must meet certain disability level thresholds. For example, if the claimant has only one service-connected disability, that disability must be rated at 60% or more. If the claimant has more than one service-connected disability, at least one of those disabilities must be rated at 40% or more, and the total combined disability for all the service-connected disabilities must be rated at 70% or more. *See* 38 C.F.R. § 4.16(a).

When a rating board determines that a claimant is unemployable due to his service-connected disabilities but the claimant fails to meet the percentage requirements listed in subsection (a), the rating board is required to submit the matter to the Director for extraschedular consideration of TDIU. Specifically, § 4.16(b) provides:

> It is the established policy of the Department of Veterans Affairs that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Therefore, rating boards should submit to the Director, Compensation Service, for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section. The rating board will include a full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue.

Although this regulation refers to "rating boards" and does not specifically mention the Board, this Court has held that § 4.16(b) applies to the Board, *see Bowling*, *supra*.

Although the Board is required to obtain the Director's decision before the Board may award

4

extraschedular TDIU, we find no merit in the Secretary's contention that the Board is limited to ensuring that the Director had the correct and full facts when rendering his decision, or that the Board otherwise is bound by the Director's decision. Such a contention creates a direct conflict with the statutory mandate that the Board render the final decision for the Secretary on all questions arising under 38 U.S.C. § 511(a), which, as discussed below, indisputably includes an award of TDIU. *See* 38 U.S.C. § 7104(a) ("Final decisions on [section 511(a)] appeals shall be made by the Board.").

On its face, the regulatory scheme created by § 4.16(b) merely withholds from rating boards the authority to grant extraschedular TDIU in the first instance. Indeed, nothing in the language of § 4.16(b) purports to limit the Board's scope of review of the Director's decision. *See Anderson v. Shinseki*, 22 Vet.App. 423, 427 (2009) ("[T]here is no restriction on the Board's ability to review the denial of an extraschedular rating on appeal.").

Moreover, even if the plain language of the regulation could be interpreted as limiting the Board's scope of review and precluding a final Board decision that was contrary to the Director's § 4.16(b) determination, such an interpretation would contravene the clear congressional intent expressed in 38 U.S.C. § 7104(a) that the Board shall be the final authority on all benefits decisions. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000) ("Regardless of . . . the problem an administrative agency seeks to address . . . it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.'"). Congress established the Board as the final arbiter on "[a]ll questions in a matter which under section 511(a) of this title is subject to decision by the Secretary," and decreed that "[f]inal decisions on [section 511(a)] appeals shall be made by the Board." 38 U.S.C. § 7104(a); *see also Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1347 (Fed. Cir. 2003) ("Together, §§ 511(a) and 7104(a) dictate that the Board acts on behalf of the Secretary in making the ultimate decision on claims.")

There is no legitimate dispute that a decision under 38 C.F.R. § 4.16(b) affects the provision of benefits, rendering it a section 511(a) issue that is subject to the Board's jurisdiction. *See* 38 U.S.C. § 511(a) ("The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans."); *see also Darrow v. Derwinski*, 2 Vet.App. 303, 304 (1992)

("The Secretary's authority under § 511(a) is exercised literally thousands of times a day in accordance with numerous regulations promulgated by the Secretary to guide ROs in adjudicating claims for benefits."). Indeed, laws affecting issues more ancillary to the provision of benefits, such as the payment of attorney's fees and accreditation and discipline of attorneys, are nevertheless laws affecting the provision of benefits under section 511(a). *See Bates v. Nicholson*, 398 F.3d 1355, 1361-62 (Fed. Cir. 2005) (holding that 38 U.S.C. § 5904(b), which provides for the suspension of agents and attorneys practicing before VA, was a law that affects the provision of benefits); *Cox v. West*, 149 F.3d 1360, 1365 (Fed. Cir. 1998) (holding that 38 U.S.C. § 5904(d)(2)(A), which provides for payment of attorney's fees out of past-due benefits owed to a veteran, was a law that affects the provision of benefits).[1]

Although the Secretary attempts to remove the Director's § 4.16(b) decision from section 511(a)'s purview by cloaking that decision as policy made on a case-by-case basis, such an argument is undermined by both the language of § 4.16(b) and by the face of the Director's decision here. As noted above, § 4.16(b) provides: "It is the established policy . . . that *all* veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities *shall* be rated totally disabled" (emphasis added). *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall[]' . . . normally creates an obligation impervious to . . . discretion." (citing *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947))). Contrary to the Secretary's contention, the policy decision was made when the Secretary promulgated a regulation mandating that all veterans who are unemployable due to service-connected disabilities will be rated totally disabled, regardless of the schedular ratings assigned.

Moreover, in his decision, the Director notes that "[§] 4.16(b) provides for [TDIU] on an extra-schedular basis for Veterans with service-connected disabilities, which are compensated below the minimum level for [TDIU] consideration under § 4.16(a), but still render the Veteran incapable of maintaining gainful employment." R. at 24. Significantly, the Director did not deny an extraschedular TDIU rating based on some cryptic policy determination or a review of extra-record

---

[1] We note for completeness that, although our jurisdiction over VA benefits decisions is broad, a decision to award equitable relief under 38 U.S.C. § 503(a) is not a decision under section 511 and therefore not reviewable by the Board or subject to our jurisdiction. *See Darrow*, 2 Vet.App. at 306. Such equitable-relief determinations are predicated on administrative error or reliance on erroneous decisions.

statistics; the decision reflects that he merely reviewed the record medical evidence and made a determination regarding whether the veteran is unemployable.[2] The Director summarized his factual and legal findings: "*The record presents no evidence* that the veteran's service-connected disabilities rendered him unable to secure and follow any substantially gainful occupation prior to December 11, 2009. Entitlement to TDIU on an extraschedular basis is denied." *Id.* at 25 (emphasis added). That statement leaves no doubt that the Director, bound by the stated policy in § 4.16(b),[3] made a factual finding based on the record evidence that Mr. Wages's service-connected disabilities did not render him unemployable to support his legal finding that Mr. Wages was not entitled to extraschedular TDIU. In short, the Director's decision is no different than an RO's decision in terms of its effect on the Board's statutory jurisdiction and the Board's standard of review. *See Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 419 F.3d 1317, 1319 (Fed. Cir. 2005) ("[T]he Board conducts de novo review of [RO] proceedings based on the record.").

As to the Secretary's argument that de novo review of the Director's decision by the Board renders the referral process in § 4.16(b) meaningless, we note that such a referral is the Secretary's chosen procedure under § 4.16(b).[4] Withholding the authority of granting extraschedular TDIU from the numerous and various ROs can provide a degree of uniformity over such decisions that would be difficult to maintain if each RO were permitted to award extraschedular TDIU.[5] Further,

[2] At oral argument, the Secretary asserted that the Director makes his decision in light of the "global picture of . . . occupational opportunities, national economy, industrial impairment, and things like that" (Oral Argument Transcript (OA) at 26:35), whereas the Board is confined to the record before the agency. Even assuming the Secretary is correct – though there is no indication that the Director considered the global picture here, and the Secretary cites no written authority for such a proposition – there remains the sticky fact that the Board renders the final decision of the Secretary on all benefits questions under 38 U.S.C. § 511(a), and the Secretary fails to explain how an award of extraschedular TDIU is not a benefits question under section 511(a).

[3] Although the Secretary contended at oral argument that the Director may find a veteran unemployable due to his service-connected disabilities yet deny extraschedular TDIU as a policy matter (*see* OA at 22:55), that contention is wholly unsupported; indeed, it is contrary to the established policy in § 4.16(b).

[4] Although it is not clear how the Secretary's approach of inserting the Director into the regulatory process while refusing to recognize the Director as the agency of original jurisdiction fits within the statutory scheme for adjudicating VA benefits claims, *see*, *e.g.*, 38 U.S.C. § 7105 (providing for Board review of decisions by an agency of original jurisdiction), we need not further address this issue in the absence of a direct challenge to that process.

[5] We note that, although the Secretary has regulatory authority to appeal an RO decision to the Board, we are not aware of such case being appealed to the Court, reflecting, we believe, the rarity of such occasions. *See* 38 C.F.R. § 19.51 (2014) (providing for administrative appeal to the Board).

requiring the Board to refer cases to the Director for extraschedular consideration may ensure that the Director is aware of the number and type of cases involving unemployability due to service-connected disability, which would permit the Director to assess whether changes to the rating schedule or § 4.16(a) might be warranted. *See* 38 U.S.C. § 1155 ("The Secretary shall from time to time readjust this schedule of ratings in accordance with experience."). These possibilities rebut the Secretary's contention that such review is meaningless.

In sum, the Secretary's contention that § 4.16(b) vests an extraschedular TDIU award solely within the nonreviewable discretion of the Director conflicts with the statutory mandate that the Board provide the final decisions on section 511(a) benefits determinations. Accordingly, this contention is rejected. *See Robbins v. Bentsen*, 41 F.3d 1195, 1198 (7th Cir. 1994) (stating that regulations "cannot trump the plain language of statutes" and refusing to read the statute and regulation as in conflict where such a reading was not necessary).

### B. Board Decision on Appeal

Turning to the Board decision on appeal, we agree with Mr. Wages that the Board relied on the Director's opinion as evidence, and that such reliance was error. Notably, the Board stated that "the [VA examinations], the December 2009 private opinion, and the October 2012 opinion from the Director [ ], *the most probative and complete medical evidence*, reflect that the veteran's service-connected disabilities did not preclude him obtaining non-strenuous or sedentary employment." R. at 13 (emphasis added). Although implemented by a December 2012 SSOC, the Director's decision is in essence the de facto decision of the agency of original jurisdiction and, as such, is not evidence, as the Secretary now recognizes. It is simply a decision that is adopted by the RO and reviewed de novo by the Board. Because the Board erred as a matter of law in assigning weight to the Director's decision, remand is warranted. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate"); *see also Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004) ("Where the effect of an error on the outcome of a proceeding is unquantifiable . . . , we will not speculate as to what the outcome might have been had the error not occurred."); *Arneson v. Shinseki*, 24 Vet.App. 379, 389 (2011) (finding prejudice when error "could have altered" the Board's determinations).

8

In light of the need to remand this matter, Mr. Wages's remaining reasons-or-bases contentions are rendered moot. *See Dunn v. West*, 11 Vet.App. 462, 467 (1998) (remand of appellant's claim under one theory moots the remaining theories advanced on appeal). On remand, Mr. Wages may present any additional evidence and argument in support of the remanded matter, and the Board must consider any evidence and address any argument so presented. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The matter is to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112.

## IV. CONCLUSION

Upon consideration of the foregoing, the Board's July 26, 2013, decision is SET ASIDE and the matter REMANDED for further adjudication.

KASOLD, *Chief Judge*, concurring: I agree with today's decision, but write separately to note that the heart of the issue decided by the Court arises from the holding in *Bowling v. Principi*, 15 Vet. App. 1, 10 (2001), that the Board is prohibited from awarding extraschedular TDIU in the first instance. The *Bowling* holding was rendered with little analysis of 38 C.F.R. § 4.16(b) or its interplay with the statutory scheme for adjudicating claims, which requires decisions of an agency of original jurisdiction to be appealed to the Board and final decisions to be rendered by the Board, *see* 38 U.S.C. §§ 7104 and 7105. Frankly, *Bowling* appears to be wrongly decided. I believe the en banc court should have taken this case for review and overturned *Bowling*, *see Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (panel decisions constitute binding precedent unless overturned by, inter alia, the full Court or the U.S. Court of Appeals for the Federal Circuit), and thereby re-established the authority of the Board to award extraschedular TDIU in the first instance.