BARTLEY, Judge,
dissenting:
The Board decision on appeal, although erroneously denying Mr. Hime’s clear and unmistakable error (CUE) motion, nevertheless made a correct factual finding: It determined that the Board in 1983 denied secondary service connection based on a medical opinion that was included in the text of the Board decision. See R. at 8. (“[T]he November 1983 Board decision included an unfavorable opinion in the form of the opinion of the Medical Doctor on the November 1983 Board panel.”). As explained below, identifying that medical opinion as extra-record evidence embedded in the text of the 1983 Board decision leads to an inescapable conclusion—that the Board in 1983 committed CUE and violated the veteran’s constitutional due process rights when it denied service connection on the basis of extra-record evidence. Therefore, I dissent from the majority’s decision to affirm the August 2014 Board decision finding no such errors.
The evidence of record in 1983 at the time the Board was considering Mr. Hime’s appeal contained two documents pertinent to this discussion: (1) A July 1982 VA examination report that indicated the veteran had full range of motion of his service-connected right shoulder (this examiner did not provide an assessment of the veteran’s left hip or otherwise comment on the etiology of left hip bursitis), R. at 907-11, and; (2) An October 1982 opinion from the Chief of Rehabilitation Medicine at the Hampton VA medical center, Dr. J.D. Keith Palmer, R. at 902. Dr. Palmer explained that Mr. Hime’s right shoulder problems had required him to begin performing “activities and motions” with his left hand[3] and that that switch to left-handed activity, necessitated by his service-connected right shoulder problems, had resulted in left hip bursitis. Id. Dr. Palmer therefore opined that the veteran’s left hip bursitis was secondarily related to his service-connected right shoulder. That opinion was the only opinion evidence of record on this matter that predated the Board decision. Based on this evidence, the Board in 1983 denied service connection for left hip bursitis secondary to a service-connected right shoulder because it concluded that the almost full range of motion in the veteran’s right shoulder, which was recorded in July 1982, “should not have caused him significant [left hip] functional problems.” R. at 867.
Given that the record evidence in 1983 included an October 1983 opinion from the Chief of Rehabilitation Medicine at a VA facility, asserting that therapy for the veteran’s service-connected right shoulder led to left hip bursitis, and no contrary opinion, it is manifestly clear that, as the *10 Board in the decision on appeal found, a negative medical opinion was included in the text of the 1983 Board decision—and that the Board relied on that opinion to deny secondary service connection for Mr. Hime’s left hip bursitis. R. at 8-10.
Although I agree with the majority that in 1983 Board medical members were permitted to rely on medical “expertise to consider whether the medical evidence of record was competent, credible, and probative,” ante at 7, that is not what happened here. As the Board in the decision on appeal found, a countervailing opinion was ultimately included in the 1983 Board decision, that the veteran’s right shoulder should not have caused significant left hip functional problems. R. at 8 (“[T]he November 1983 Board decision included an unfavorable opinion in the form of the opinion of the Medical Doctor on the November 1983 Board panel.”), 9 (“It is evident that the Board Medical Member disagreed with the October 1982 opinion authored by the VA physician that the [vjeteran’s ischial bursitis of the left hip was secondary to his service-connected residuals of a right shoulder injury.”).
The majority does not determine that this Board factual finding is clearly erroneous. Instead, my colleagues focus on the Secretary’s characterization of the 1983 Board decision as evidence, simply ignoring the Board’s characterization in the decision on appeal of the 1983 decision as containing evidence that was not part of the record before the Board. R. at 8. The majority’s reliance on Wages v. McDonald, 27 Vet.App. 233, 239 (2015), to reject the Secretary’s argument is therefore misplaced. See ante at 6-8. Wages holds only that a VA decision is not evidence; it does not prohibit the Board from finding, as the Board did here, that an earlier Board decision includes an extra-record medical opinion. See 27 Vet.App. at 239. Thus, the majority’s discussion of Wages is a red herring that serves only to obfuscate the August 2014 Board finding under judicial review. As the Board decision on appeal correctly found, even if the 1983 Board decision itself is not considered evidence, it nevertheless contains an extra-record medical opinion evidentiary in nature. R. at 8. Therefore, unlike my colleagues, I believe it necessary to address whether the November 1983 Board’s reliance on that extra-record medical opinion, which the Board decision on appeal freely admits was included in the 1983 decision, constituted CUE or violated Mr. Hime’s constitutional due process rights, as argued by the veteran.
I. CUE
Mr. Hime contends, inter alia, that the Board in November 1983 committed CUE because “the only evidence of record supported a finding of [secondary] service connection” for left hip bursitis, essentially asserting that the medical opinion that was included in the 1983 decision was not part of the record before the Board. Appellant’s Brief (Br.) at 8. In November 1983, the relevant statute required that the Board “base its decision on the entire record.” 38 U.S.C. § 4005(d)(5) (1982). At that time, however, the record in Mr. Hime’s case did not contain a negative opinion as to whether left hip bursitis was secondary to the veteran’s service-connected right shoulder; one was included in the Board decision when it was written. R. at 864-68; see R. at (“[T]he November 1983 Board decision included an unfavorable opinion in the form of the opinion of the Medical Doctor on the November 1983 Board panel.”). As such, it cannot be said that the record before the Board at the time it was considering the veteran’s entitlement contained any negative evidence as to linkage. Therefore, I would find that *11 the Board’s reliance on that extra-record evidence to deny the claim violated section 4005(d)(5).
That error was undebatable and led to a manifestly different outcome in the case: Aside from the extra-record negative opinion, which cannot be viewed as having been part of the record before the Board, the only evidence of record as to linkage was Dr. Palmer’s positive opinion. Because the record did not contain any countervailing linkage evidence, the claim for service connection for left hip bursitis should have been resolved in the veteran’s favor. See 38 C.F.R. § 3.102 (1983). But for the 1983 Board’s erroneous consideration of extra-record evidence, the medical opinion that the Board in 2014 found was included within the 1983 Board decision, R. at 8, Mr. Hime would have been granted secondary service connection for left hip bursitis. See Russell v. Principi, 3 Vet.App. 310, 313-14 (1992) (en banc). Given the foregoing, I would set aside the August 2014 Board decision finding no CUE in the November 1983 Board decision as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, and remand the case for a retroactive grant of secondary service connection for left hip bursitis. See Sondel v. West, 13 Vet.App. 213, 222-23 (1999).
II. Due Process
The Board in November 1983 denied Mr. Hime due process of law by including the negative opinion into its decision without first notifying the veteran of that evidence and providing him an opportunity to respond to it. Appellant’s Br. at 13-14. The Due Process Clause of the Fifth Amendment prohibits the United States from depriving individuals of life, liberty, or property without due process of law. U.S. Const. amend. V. Eligible applicants for VA disability benefits are protected by the Due Process Clause because they have a constitutionally protected property interest in their entitlement to those benefits.[4] Cushman v. Shinseki, 576 F.3d 1290, 1298 (Fed.Cir.2009).
The amount of process that is constitutionally due depends on the situation, taking into account “the private interests that will be affected by the official action”; “the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards”; and “the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citing Goldberg v. Kelly, 397 U.S. 254, 263-71, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)); see Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (“[D]ue process is flexible and calls for such procedural protections as the particular situation demands.”). “The core of due process is the right to notice and a meaningful opportunity to be heard.” LaChance v. Erickson, 522 U.S. 262, 265, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998); see Dusenbery v. United States, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002); Mathews, 424 U.S. at 333, 96 S.Ct. 893. In general, those rights must be accorded prior to the deprivation of a property interest. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. *12 780, 28 L.Ed.2d 113 (1971); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
In Cushman, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) found that the Board’s April 1980 reliance on an improperly altered document in the record violated the veteran’s constitutional due process rights because his initial benefits determination was tainted by the presence of the altered document, that determination was subject to deferential review on a record that contained the document, and the document was not removed from the record in subsequent proceedings. 576 F.3d at 1299-1300. The Federal Circuit remanded for a de novo determination of the veteran’s 1977 claim, implicitly declaring the April 1980 Board decision nonfinal. Id. at 1300. Hence, if a prejudicial due process violation occurred in this case, the 1983 Board decision may not stand in the way of a possible grant of service connection for left hip bursitis effective as early as the date of his original claim for those benefits in April 1982. R. at 929-30; see Cushman, 576 F.3d at 1300; see also Gambill v. Shinseki, 576 F.3d 1307, 1311 (Fed.Cir.2009) (holding that the denial of due process “in a particular case is subject to harmless error analysis”).
Turning to the merits of Mr. Hime’s argument, I agree with him that the 1983 Board denial of service connection for left hip bursitis violated the tenets of constitutional due process to the extent that a negative opinion was included in the decision without first providing the veteran notice of the negative opinion and an opportunity to meaningfully respond to it. At best, Mr. Hime was provided postadju-dication notice of the adverse opinion. However, the Due Process Clause required more.
An analysis of the process constitutionally due to the veteran begins with an assessment of the private interest at stake in a VA disability claim, see Mathews, 424 U.S. at 335, 96 S.Ct. 893—namely, an eligible veteran’s entitlement to nondiscretion-ary, statutorily mandated disability benefits that a grateful nation has set aside for those willing to make the ultimate sacrifice to protect their fellow citizens, see Cushman, 576 F.3d at 1298; see also Sneed v. Shinseki, 737 F.3d 719, 728 (Fed.Cir.2013) (“Although benefits cases may not threaten veterans’ liberty or persons, veterans risked both life and liberty in their military service to this country. The veterans benefits scheme is thus ‘imbued with special beneficence from a grateful sovereign.’ ” (quoting Bailey v. West, 160 F.3d 1360, 1370 (Fed.Cir.1998) (Michel, J., concurring))). This is a “substantial” interest, one that weighs heavily in favor of requiring the type of procedural safeguards identified by Mr. Hime. Gambill, 576 F.3d at 1314.
The U.S. Supreme Court has stated that a veteran’s private interest in entitlement to VA disability benefits is not as great as an individual’s right to continued receipt of welfare subsistence benefits, which warrant the greatest level of constitutional protections. Walters v. Nat’l Ass’n of Radiation Survivors, 473 U.S. 305, 333, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985) (noting that “the benefits at stake in VA proceedings, which are not granted on the basis of need, are more akin to the Social Security benefits involved in Mathews than they are to the welfare payments upon which the recipients in Goldberg depended for their daily subsistence”). Even so, the administrative process found constitutionally adequate in Mathews provided greater procedural protections than the process provided Mr. Hime here. The claimant in Mathews was given pre-deprivation notice of the evidence upon which the proposed *13 termination of his Social Security benefits was based, 424 U.S. at 338, 96 S.Ct. 893, whereas Mr. Hime was not notified of the adverse opinion to be included in the 1983 Board decision until he received the decision denying service connection for left hip bursitis, R. at 867. Given the favored status of veterans and their families, I am not convinced that the Constitution tolerates such a result. Cf. Sneed, 737 F.3d at 728 (explaining that “[t]he special treatment Congress reserved for veterans requires that courts lend veterans at least the same degree of solicitude as that bestowed on habeas petitioners,” a class of individuals that the Constitution has traditionally afforded great protections); Bailey, 160 F.3d at 1368 (noting the Supreme Court’s leniency in applying equitable tolling to convicted felons and stating that it was “loath to treat less worthily those who have served the country”). If Mr. Hime had been notified of a negative opinion contrary to Dr. Palmer’s positive opinion, the veteran would have had the opportunity to develop additional evidence to counter it. As it happened, he believed that there was no opinion contrary to Dr. Palmer’s medical opinion.
The second Mathews factor also favors Mr. Hime because the risk of erroneous deprivation of a claimant’s entitlement to VA disability benefits was great at the time when a single entity—the Board— was authorized to develop and include, without notice to the claimant, negative medical evidence and render unappealable decisions on that evidence without pread-judication input from the claimant. Though Congress has long intended the veterans benefits system to be “as informal and nonadversarial as possible,” Walters, 473 U.S. at 323-24, 105 S.Ct. 3180, it recognized in 1988 that there was an unacceptable level of risk inherent in allowing VA to operate in “splendid isolation ... insulated from judicial review,” H.R. Rep. 100-963 (internal quotations omitted). That degree of risk is amplified by the fact that, prior to 1988, the only avenue for refuting an adverse Board medical member opinion included in a Board decision denying benefits was to file a motion for Board reconsideration of that decision. But such motions then, as now, were to be granted only upon a finding of “obvious error of fact or law” or “[u]pon discovery of new and material evidence in the form of records or reports of the military, naval or air service department concerned or officially corrected service department record.” 38 C.F.R. § 19.185 (1983).
Although the majority points to this process as an avenue that Mr. Hime could have used to challenge the 1983 Board decision, see ante at 8-9, the Board’s policy in 1983 of allowing the inclusion of extra-record opinions into decisions would have prevented Mr. Hime from meeting the highly circumscribed and exacting standard for Board reconsideration based on an allegation that the Board erred in relying on such an extra-record opinion. Thus, the specter of such relief did not ameliorate the risk of erroneous deprivation inherent in allowing the Board to develop adverse opinions and include them in their decisions. See Leary v. Daeschner, 228 F.3d 729, 743 (6th Cir.2000) (“[T]he sufficiency of predeprivation procedures must be considered in conjunction with the options for postdeprivation review; if elaborate procedures for postdeprivation review are in place, less elaborate predepri-vation process may be required.”).
The final Mathews factor—“the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail,” 424 U.S. at 335, 96 S.Ct. 893—also supports Mr. Hime. VA’s paramount interest in vet *14 erans benefits cases, as articulated by the Federal Circuit in Barrett v. Nicholson, 466 F.3d 1038, 1044 (Fed.Cir.2006), is “not that [the Government] shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them.” In this respect, VA’s interest in according justice to VA disability claimants is aligned with the claimants’ interest in receiving the benefits to which they are legally entitled.
This interest cannot be achieved at any cost; VA has a concomitant interest in protecting the public fisc and ensuring that the veterans benefits system is not overburdened by unnecessary procedural requirements, so that meritorious claims may be efficiently processed and benefits timely paid. See Mathews, 424 U.S. at 348, 96 S.Ct. 893. However, it would be inconsistent to find the cost to the Government of providing preadjudication notice of and an opportunity to respond to adverse Board-developed evidence high when, in fact, VA provided that very process to claimants for all other types of Board-developed evidence. The version of 38 C.F.R. § 19.179 in effect in 1983 provided that, when the Board obtained a medical opinion from an independent medical expert, VA’s Chief Medical Director, or the Armed Forces Institute of Pathology, the Board was required to (1) furnish a copy of the opinion to the appellant or his or her representative, and (2) provide 60 days for the appellant to respond. 38 C.F.R. § 19.179 (1983) (citing 38 C.F.R. §§ 19.176-77 (1983)). It is unclear why VA did not extend this process to situations where the Board was inclined to include an opinion in the adjudicative decision itself; however, regardless of the reason for not doing so, the fact that VA afforded this additional process to all other types of Board-developed evidence suggests that the process was not unduly costly or burdensome for VA.
Given the substantial private interest claimants have in entitlement to VA disability benefits, the concordant Government interest in ensuring that veterans and their families receive those duly earned benefits, the high risk of an erroneous deprivation of that property interest inherent in the regime that allowed inclusion of medical opinions in Board decision without first disclosing such to claimants, and the apparently low financial and administrative cost of providing preadjudication notice of and an opportunity to respond to such opinions, I would find that the Due Process Clause of the Fifth Amendment required the Board in 1983, before deciding Mr. Hime’s claim, to notify him of any adverse opinion and provide him an opportunity to respond. See Mathews, 424 U.S. at 335, 96 S.Ct. 893. I would therefore conclude that the Board denied Mr. Hime due process of law in 1983 when it failed to so notify him and provide him an opportunity to rebut the negative opinion.
Although the majority and Secretary attempt to avoid this conclusion by declaring that Mr. Hime received all the process he was constitutionally due because he was on notice that Board panels contained medical doctors and he had the opportunity to challenge a Board-generated opinion via a motion for Board Chairman reconsideration or a motion for revision based on CUE, ante at 8-9; Secretary’s Br. at 14, that argument is utterly inconsistent with VA’s express position in 1983 regarding the amount of process that was constitutionally due claimants for VA disability benefits. Notably, the version of the Board Manual in effect at that time declared that “it is an element of administrative due process that a claimant be afforded an opportunity to present evidence and/or argument on all data relevant to the claim.” Board op Veterans’ Appeals Man *15 ual Number 1 (MBVA-1), ch. 7, § III, para. 7.19(g) (July 1977) [hereinafter July 1977 MBVA-1]. The MBVA-1 clarified, in a section entitled “Due Process,” that appellants have the “right to know about the factual evidence” before the Board. Id. at ch. 7, § I, para. 7.02(a). It explained that such notice, usually afforded via a Statement of the Case (SOC) or Supplemental SOC, was necessary to enable claimants “to proceed on an informed basis in developing and presenting appeals” by “permit[ting] them to identify any facts ... with which they disagree, identify any error of law they believe was made, and present argument in more specific detail rather than simply asking that the conclusion reached be reviewed.” Id. It is clear that Mr. Hime was deprived of the notice of the Board medical member’s negative opinion and the opportunity to respond to it that VA considered due to him.
Given the foregoing, I must respectfully dissent from the majority’s decision to affirm the August 2014 Board decision.

. Mr. Hime was right-handed.

. Mr. Hime was thus protected because he properly filed a claim for secondary service connection in April 1982, R. at 929-30, and VA, in granting Mr. Hime service connection for a right shoulder disability in November 1979, found that he met the threshold eligibility requirements for disability compensation, R. at 936.