# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-2333

HANK M. SMIDDY, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided May 28, 2020)

*Amy F. Odom* and *Barton F. Stichman*, both of Washington, D.C., and *James D. Arden*, of New York, New York, were on the brief for the appellant.

*Meghan Flanz*, Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; *Carolyn F. Washington*, Deputy Chief Counsel; and *Laura R. Braden*, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, GREENBERG, and MEREDITH, *Judges*.

PIETSCH, *Judge*: The appellant, Hank M. Smiddy, appeals through counsel a March 17, 2016, Board of Veterans' Appeals (Board) decision that denied a disability rating higher than 10%, on an extraschedular basis, for status post left inguinal hernia repair with ilioinguinal nerve entrapment (inguinal hernia repair residuals). Record (R.) at 2-19. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This case concerns the legal analysis that the Board conducts after receiving an extraschedular decision from the director of the Compensation Service (Director) under 38 C.F.R. § 3.321(b)(1) (2015).

On January 19, 2018, the Court submitted this matter to a panel for consideration. On March 12, 2018, the Court received the parties' supplemental briefs. The following month, the appellant filed a motion for oral argument, which the Secretary opposed. The Court concludes that oral argument will not materially assist its deliberations. *See O'Brien v. Wilkie*, 30 Vet.App. 21, 24 (2018). The appellant's motion is therefore denied.

For the reasons that follow, the Court will vacate the Board's March 17, 2016, decision and will remand the matter for further proceedings consistent with this decision.

## I. BACKGROUND

The appellant served in the U.S. Army from October 1991 to September 1995. R. at 3084-86, 1439. During service, he underwent a left inguinal hernia repair, which resulted in nerve entrapment. R. at 1448, 1725. In a March 2004 rating decision, the Nashville, Tennessee, VA regional office (RO) awarded service connection for inguinal hernia repair residuals and assigned a 10% disability rating effective June 1998. R. at 2958-61.

In January 2005, the appellant filed an increased-rating claim for this disability. R. at 2953-54. In a July 13, 2005, rating decision, the RO denied entitlement to a higher rating, noting that the appellant's 10% rating was the maximum schedular evaluation possible under the applicable diagnostic code (DC). R. at 2786-93 (assigning a hyphenated disability rating under 38 C.F.R. §§ 4.114, DC 7338 (inguinal hernia) (2006), 4.124a, DC 8730 (neuralgia of ilio-inguinal nerve) (2006)). The RO also declined to refer the case for extraschedular consideration. *Id.* The appellant submitted a Notice of Disagreement the following month, R. at 2776, and VA issued a Statement of the Case in May 2006 that continued the 10% schedular disability rating and denied extraschedular referral, R. at 2743-60. The appellant perfected his appeal in June 2006. R. at 2729-30.

In August 2010, the Board remanded the appellant's claim for a new VA examination "to address the current nature and etiology of [the appellant's] chronic left inguinal hernia repair residuals, left ilioinguinal nerve entrapment, and erectile dysfunction." R. at 2635. The appellant underwent the VA examination in January 2011, R. at 5, but the Board again remanded the case in August 2012, finding that the January 2011 VA examination had not complied with the Board's August 2010 remand instructions, R. at 2558-59.

The appellant underwent a new VA examination in September 2012. R. at 2489-518. The examiner did not detect a hernia on physical examination and found no conditions calling for a supporting belt. R. at 2491. The examiner diagnosed the appellant with moderate sensory neuropathy of the left ilioinguinal nerve. R. at 2510. He noted that the hernia affected the appellant's ability to work, and that the pain from the corresponding peripheral nerve condition was "worsened by walking, squatting, and lifting at work," such that it "caused him to work longer

2

hours . . . since the pain [] slow[ed] him down." R. at 2493, 2509-10. The examiner also found that the appellant could not "wear tight fitting clothing since the touch of the clothing [] cause[d] pain in [his] thigh." R. at 2510. The examiner further found that the appellant had a voiding dysfunction, and that the etiology of the voiding dysfunction was the inguinal hernia repair surgery. R. at 2511.

In July 2013, the Board requested that a Veterans Health Administration (VHA) medical expert opine on two questions: (1) What current disabilities were associated with the appellant's left inguinal hernia repair residuals with ilioinguinal nerve entrapment? and (2) whether the appellant's voiding dysfunction with urinary leakage was a symptom of his service-connected disability? R. at 2149. The following month, a VHA medical expert opined that the appellant's chronic left testicular discomfort and left thigh numbness should not interfere with employment, and that it was "highly unlikely" that his urological complaints were associated with his ilioinguinal nerve entrapment, given that the ilioinguinal nerve "is a peripheral nerve and not associated with voiding function." R. at 2116-17.

In an April 2014 decision, the Board denied the appellant's claim for a schedular rating greater than 10% for inguinal hernia repair residuals. R. at 1969-73. However, the Board determined that "the unusual or exceptional disability picture associated with the [appellant's] left inguinal nerve entrapment render[ed] the schedular criteria under 38 C.F.R. §§ 4.123, 4.124a Diagnostic Code 8530, 86[3]0 inadequate," and that "[t]he [appellant's] clinical records and written statements on appeal reflect significant impairment of his occupational and social activities not represented by the current 10 percent evaluation." R. at 1974. The Board concluded that the appellant's inguinal hernia repair residuals presented "an exceptional disability picture" and, accordingly, referred the claim to the Director for extraschedular consideration. *Id.*

In August 2015, the appellant submitted to VA a request for a total disability rating based on individual unemployability (TDIU). R. at 1318-19. He identified the conditions preventing a gainful occupation as his knees, ankles, arthritis, and kidney stones. R. at 1318; *see* R. at 1316-17.

In October 2015, the Director issued a decision denying an extraschedular rating for the appellant's inguinal hernia repair residuals. R. at 1269-70. The Director stated:

> [A]part from the objective evidence confirming the 10% evaluation currently entitled to and other subjective evidence[,] such as the [appellant] indicating that his scar has caused him discomfort so that he can't wear tight fitting clothing, has affected his sexual activity, and it's slowed him down

3

> at work[,] no further evidence of an unusual disability picture such as frequent hospitalizations or of marked interference with employment have been presented.

R. at 1269. The Director also reasoned that the objective medical evidence of record suggested that the 10% schedular evaluation was adequate, that the appellant had continued to work full-time, and that the various medical opinions had found that the appellant's disability should not prevent him from maintaining gainful employment. *Id.* The Director also noted that the appellant was already service connected for erectile dysfunction. *Id.*

In its March 2016 decision we consider here on appeal, the Board determined that an extraschedular rating for inguinal hernia repair residuals was not warranted. R. at 2-19. The Board found that the evidence of record was against a finding that the appellant's inguinal hernia repair residuals presented "such an exceptional or unusual disability picture that the available schedular evaluations are inadequate." R. at 17-18 (citing *Thun v. Peake*, 22 Vet.App. 111, 115 (2008), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009)). Specifically, the Board found that the manifestations of the appellant's disability included "pain and discomfort at the left testicle and thigh, in addition to left thigh numbness," and that "[t]hese manifestations [were] fully contemplated by the rating criteria for neuralgia of the ilioinguinal nerve." R. at 18. Additionally, the Board determined that, although the appellant "assert[ed] his disability has worsened due to urinary symptomatology, competent medical evidence of record indicates that [his] voiding dysfunction with urinary leakage is not a symptom of his left inguinal hernia repair residuals." R. at 8. The Board also found "no evidence of unusual factors such as frequent hospitalizations or marked interference with employment stemming from the [appellant's] inguinal hernia repair residuals." R. at 18. In reaching this conclusion, the Board stated that it had no reason to doubt the appellant's reports of slowed work performance due to pain from his inguinal hernia repair residuals, but that "slower performance alone does not comprise [sic] marked interference with employment" and that in his TDIU request he "did not attribute his inability to work to his hernia repair residuals." R. at 17. The Board thus concluded that an extraschedular rating was not warranted. R. at 17-18. This appeal followed.

## II. THE PARTIES' ARGUMENTS

The appellant argues that, in its 2016 decision, the Board provided an inadequate statement of reasons or bases because the Board failed to explain why it revisited and reversed its 2014 referral findings. Appellant's Brief (Br.) at 9-17; Reply Br. at 1-5. He also asserts that, even if the Board were permitted to reverse its prior factual findings, it nonetheless failed to adequately explain its conclusion denying an extraschedular rating. Appellant's Br. at 18-25; Reply Br. at 6-8. The appellant also contends that the Board erred when it conflated its "marked interference with employment" analysis with a "total disability" analysis, and offered no legal basis or explanation for concluding that slower work performance alone does not constitute marked interference with employment. Appellant's Br. at 23-24; Reply Br. at 7-8. He also argues that the Board failed to adequately explain its determination that his genitourinary symptoms were not related to his inguinal hernia repair residuals. Appellant's Br. at 25-27; Reply Br. at 9-11. Finally, the appellant asserts that remand is required because it is not possible to determine whether the outcome of this case would have been different if the Board had corrected the errors and deficiencies in its decision. Reply Br. at 5.

The Secretary avers that the Board provided adequate reasons or bases for denying an extraschedular rating and was not obligated to more specifically address its provisional factual findings supporting the 2014 referral. Secretary's Br. at 9-14. He also argues that the appellant was not prejudiced by any error in the Board's extraschedular analysis. *Id.* at 14-20. Finally, he contends that the Board did not err in finding that the appellant's genitourinary symptoms were not related to his inguinal hernia repair residuals. *Id.* at 20-22.

In February 2018, the Court directed the parties to file supplemental memoranda discussing several aspects of the *Thun* framework for establishing entitlement to extraschedular consideration, particularly the role of the Board when it receives a post-referral decision from the Director. In response, the appellant asserted that, after the Director makes a decision, the Board should review the entirety of that decision to "ultimately determine" whether it accords justice to award an extraschedular rating. Appellant's Supplemental Memorandum (Supp. Memo.) at 3. The appellant further argued that the Board's factual findings regarding *Thun* steps 1 and 2 should not differ between the referral stage and the adjudication stage and, if they do, the Board must explain why. *Id*. at 6-8. In that regard, he asserts that the Board's ordinary reasons-or-bases requirement is heightened when its adjudication decision is different from its referral decision. *Id*. at 8-10.

5

For his part, the Secretary argued that, if after receiving the Director's decision the Board determines on de novo review that *Thun* steps 1 and 2 are not met, the Board need not conduct any analysis under *Thun* step 3. Secretary's Supp. Memo. at 1-3. If the Board conducts an analysis under step 3, the Secretary continued, the Board's discussion should focus on whether an extraschedular rating would be commensurate with the average, rather than actual, impairment of earning capacity due exclusively to the disability. *Id*. at 3-4. Next, the Secretary argued, as the appellant did, that the Board's de novo review of steps 1 and 2 "should not differ depending upon whether the Board is considering extraschedular referral or adjudication." *Id*. at 5. Yet the Secretary asserted that, after the Board receives the Director's decision, the Board should not be subject to a heightened reasons-or-bases standard when it considers whether an extraschedular rating is warranted. *Id*. at 6-7.

## III. ANALYSIS

By way of background, on April 16, 2018, the Court submitted *Morgan v. Wilkie* to the full Court to address the viability of the extraschedular framework as set out in *Thun*. 31 Vet.App. 162 (2019). On May 16, 2019, the full Court returned *Morgan* to a panel of Judges, which issued its decision without addressing the extraschedular framework, finding the Board's decision unclear as to whether extraschedular referral had been raised. *Id*. at 166. The day *Morgan* issued, the Court submitted *Long v. Wilkie*, U.S. Vet.App. No. 16-1537 (oral argument held Aug. 28, 2019), to the full Court to address the viability of the extraschedular framework. While the Court is considering the continued viability of the extraschedular framework in *Long*, the panel determines that the reasoning and holding of *Ray v. Wilkie* largely control this appeal and that the panel may proceed to consider this appeal because the decision is limited to post-referral extraschedular determinations based on the 2016 regulatory framework. 31 Vet.App. 58 (2019).

A. Extraschedular Evaluations and Standard of Review

VA's schedule of disability ratings is based on the average impairment of earning capacity in civil occupations from specific injuries or combinations of injuries. 38 U.S.C. § 1155; 38 C.F.R. § 3.321(a) (2015). However, "[t]o accord justice[] . . . to the exceptional case where the schedular evaluations are found to be inadequate, . . . the Director" is authorized to approve an extraschedular rating "commensurate with the average earning capacity impairment due exclusively to the service

connected disability or disabilities." 38 C.F.R. § 3.321(b)(1).[1] The "governing norm" in these cases is whether they present "such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization so as to render impractical the application of the regular schedular standards." *Id.*

In *Thun*, the Court set forth the "three-step inquiry" for determining whether a claimant is entitled to an extraschedular rating under § 3.321(b)(1). 22 Vet.App. at 115-16; *see Anderson v. Shinseki*, 22 Vet.App. 423, 427 (2009) (clarifying that the "steps" described in *Thun* "are, in fact, elements that must be established before an extraschedular rating can be awarded"). First, either the RO or the Board must find "that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate." *Thun*, 22 Vet.App. at 115. This step requires "a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability." *Id.* If "the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate," the second step of *Thun* provides that "the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as 'governing norms,'" such as "marked interference with employment" and "frequent periods of hospitalization." *Id.* (citing 38 C.F.R. § 3.321(b)(1) (2007)). Finally, if the criteria under the first two steps are satisfied, "then the case must be referred to the [Director] for completion of the third step—a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating." *Id.*

The Board's extraschedular referral decision, as well as the ultimate determination of whether an extraschedular rating is appropriate, are factual determinations that the Court reviews under the "clearly erroneous" standard of review. *Ray*, 31 Vet.App. at 65 (stating that if the "Board's referral[s] [for extraschedular consideration] denials are factual decisions . . . [w]e can think of no principled reasons why . . . a decision *to refer* a claim [for extraschedular consideration] is not [a factual decision]" (emphasis added)); *Pederson v. McDonald*, 27 Vet.App. 276, 286 (2015) (en banc) (noting that the Board's decision not to refer a claim for extraschedular

---

[1] Effective January 8, 2018, VA amended § 3.321(b)(1) to prohibit extraschedular consideration based on the combined effects of more than one service-connected disability. *See* Department of Veterans Affairs, Extra-Schedular Evaluations for Individual Disabilities, 82 Fed. Reg. 57,830 (Dec. 8, 2017); *see also Thurlow v. Wilkie*, 30 Vet.App. 231, 238-40 (2018).

consideration is based on several factual determinations); *Thun*, 22 Vet.App. at 115.  As with any finding on a material issue of fact and law presented on the record, the Board must support its determination with an adequate statement of reasons or bases that enables the claimant to understand the precise basis for that determination and facilitates review in this Court.  38 U.S.C. § 7104(d)(1); *Thun*, 22 Vet.App. at 115; *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990).  To comply with this requirement, the Board must analyze the credibility and probative value of evidence, account for evidence it finds persuasive or unpersuasive, and provide reasons for rejecting material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

## B.  Post-Referral Analysis

### *1. Law*

In *Anderson*, a decision review officer (DRO) referred the case to the Director to determine whether an extraschedular rating was warranted.  The Director denied an extraschedular rating and the Board agreed with the Director's denial.  22 Vet.App. at 424-25.  On appeal, the Court rejected the appellant's argument elevating the analysis under each *Thun* element into a separate final decision that was binding on the Director and the Board.  *Id.* at 427.  Instead, the Court held that the Board was permitted to review the DRO's and Director's findings, and that the Board "has jurisdiction to review whether the decision not to award an extraschedular rating was appropriate under all three elements set forth in *Thun*."  *Id*. at 428.  The Court also clarified that "the [referral] analysis performed by the RO or Board is done for the limited purpose of determining whether *referral* of the matter for extraschedular consideration is warranted[,] [but] [t]he actual review of the matter and approval of an extraschedular rating is done for the first time by the Director . . . ." *Id*. (citations omitted).

There is no dispute over *Anderson*'s holding that the extraschedular referral determinations are not binding on the actual extraschedular adjudication; however, the present case differs in one key respect: Here, the Board was reviewing not the DRO's referral findings, but its own referral findings.  And, although *Anderson* distinguished between the "limited purpose" of the referral analysis and the "actual review of the matter and approval of an extraschedular rating" performed for the first time by the Director, the Court did not clarify whether the Board's post-referral analysis of its own referral findings necessarily required a re-evaluation of *Thun* elements 1 and 2.

8

Accordingly, this case presents the following question: How does the Board's review of *Thun* elements 1 and 2 at the adjudication stage differ from its review at the referral stage?

In *Wages v. McDonald*, the Court held that the Director's opinion was not evidence that the Board could use in its post-referral decision. 27 Vet.App. 233, 239 (2015) (per curiam). Rather, the Director's decision was a decision adopted by the RO and reviewed by the Board de novo. *Id*. Under *Thun*, following referral, the Director and the Board must determine "whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating." 22 Vet.App. at 115. Although this Court has held that extraschedular determinations are capable of judicial review, *Kuppamala v. McDonald*, 27 Vet.App. 447, 457 (2015), neither § 3.321 nor *Thun* provides any concrete test or guidance for the Court to apply when reviewing the Board's extraschedular decision, aside from the first two elements described at the referral stage. For guidance as to what the Board must do in the absence of any other specified test at the post-referral stage, the Court turns to its recent precedent in *Ray*, as well as the Board's reasons-and-bases requirement under 38 U.S.C. § 7104(d)(1).

Although *Ray* addressed the extraschedular referral process in the TDIU context under 38 C.F.R. § 4.16, *Ray* nonetheless offers compelling logic that also applies in the increased-rating context under § 3.321. *See* 31 Vet.App. at 66-67; *cf. King v. Shulkin*, 29 Vet.App. 174, 178 (2017) ("The goal of the entire rating process is to appropriately compensate veterans. The schedular and extraschedular analyses are just different means of doing so."); *Norris v. West*, 12 Vet.App. 413, 420-21 (1999) ("A TDIU rating is not a basis for an award of service connection. Rather, it is merely an alternate way to obtain a total disability rating without being rated 100% disabled under the Rating Schedule."). *But see Kellar v. Brown*, 6 Vet.App. 157, 162 (1994) (noting that evaluations regarding employability in § 4.16 and interference with employment contained in § 3.321(b)(1) are different metrics); *Stanton v. Brown*, 5 Vet.App. 563, 564-70 (1993) (holding that the issue of extraschedular rating is separate from the issue of TDIU rating).

In *Ray*, the Court acknowledged that "the decisions to refer and to award a[n extraschedular TDIU] rating are fundamentally different" and that a referral decision does not require the Board to award an extraschedular rating. 31 Vet.App. at 65. The Court explained that to hold otherwise would make the Director "little more than a rubberstamp." *Id*. at 64. However, the Court also held that, because the en banc Court in *Pederson* held that the Board's referral denials are factual decisions, it would be logically inconsistent to hold that a decision to refer a claim is not a factual

9

decision. *Id*. at 65. Rather, the Court held that "the initial extraschedular referral decision under § 4.16(b) addresses whether there is sufficient evidence to substantiate a reasonable possibility that a veteran is unemployable by reason of his or her service-connected disabilities." *Id*. at 66. And, whether a "preponderance of the evidence nevertheless shows that a veteran is unemployable by reason of his or her service-connected disabilities" is the question to answer in the adjudication stage of assigning an extraschedular disability rating. *Id*.

The Court also held in *Ray* that "the Board must ensure that it adequately explains its reasoning when a factual finding made at the referral stage comes out differently at the review stage." *Id*. at 66-67. The Court suggested that the certitude or equivocality of the Board's language in a referral decision could affect the amount of explanation required where there is deviation at the award stage. *Id*. at 67 ("For example, where the Board finds referral appropriate because 'it is beyond dispute' that a veteran was unemployable because of his service-connected disabilities, more explanation might be needed for a contrary finding than where the Board's referral finding is more equivocal."). In *Ray*, the Court remanded the case to the Board for an adequate statement of reasons or bases for "its different factual determinations at the referral and review stages." *Id*.

In the instant case, the Court extends *Ray*'s reasoning and holding in the context of extraschedular TDIU under § 4.16(b) to the context of extraschedular rating under § 3.321(b). *Cf. Rice v. Shinseki*, 22 Vet.App. 447, 453 (2009) (per curiam) ("Because Mr. Rice was challenging the initial disability rating assigned for the disability upon which he based his assertion of unemployability . . . the determination of whether he is entitled to TDIU . . . is part and parcel of the determination of the initial rating for that disability."). The initial extraschedular referral decision under § 3.321(b) addresses whether there is sufficient evidence to substantiate a reasonable possibility that "application of the regular schedular standards" is impractical because the disability is "exceptional or unusual . . . with such related factors as marked interference with employment or frequent periods of hospitalization." 38 C.F.R. § 3.321(b) (2015); *see Thun*, 22 Vet.App. at 115-16. Accordingly, the Court holds that, in the extraschedular rating context, the Board's reasons-or-bases requirement obligates it to "explain[] its reasoning when a factual finding made at the referral stage comes out differently at the review stage." *Ray*, 31 Vet.App. at 67.

*2. Application to the Facts of this Case*

Here, the language of the Board's 2014 referral decision was not equivocal. The Board found that the

10

unusual or exceptional disability picture associated with the [appellant's] left inguinal nerve entrapment renders the schedular criteria under 38 C.F.R. §§ 4.123, 4124a, Diagnostic Code[s] 8530, 86[3]0[,] inadequate in the instant appeal. The [appellant's] clinical records and written statements on appeal reflect significant impairment of his occupational and social activities not represented by the current 10 percent evaluation. Accordingly, the Board concludes that [his] left inguinal hernia repair residuals with ilioinguinal nerve entrapment present an exceptional disability picture which warrants referral to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for extra-schedular consideration.

R. at 1974. And little was added to the record following the 2014 referral.[2] The Director's opinion does not count as evidence. *See Wages*, 27 Vet.App. at 239. The appellant's 2015 TDIU application, although new, is not necessarily determinative of his increased-rating claim. *See Kellar*, 6 Vet.App. at 162 (holding that, because "the effect of a service-connected disability appears to be measured differently for purposes of extraschedular consideration" and "for purposes of a TDIU" request, the appellant's claim for extraschedular consideration of his service-connected condition "is not inextricably intertwined with the TDIU [matter] which has been referred to" the agency of original jurisdiction). Thus, it is unclear why, on mostly the same facts, the Board reached opposite conclusions. *See* Appellant's Br. at 9-14. Although the Board was not bound by its 2014 referral decision, it did not explain why it had reached an opposite conclusion in its 2016 decision. In the 2016 decision, the Board did not discuss the 2014 referral findings, but simply noted the referral. To enable the appellant to understand the precise basis for its decision, the Board must explain why it reached a different result. Here, the appellant believes that, by the referral in 2014, he received a "yes" to an extraschedular rating, and then in 2016 received a "no," although the Board had evaluated the same two *Thun* factors. Because the Board treated the 2014 and 2016 *Thun* determinations differently, it must explain why and how they were different. *See Allday*, 7 Vet.App. at 527. Its failure to do so frustrates judicial review. *See id.*; *see also* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 56-57.

To the extent the Secretary may be asserting that any Board reasons or bases deficiency in failing to explain its conflicting referral and award determinations is nonprejudicial, the Court cannot conclude that this error was harmless. In that regard, the Board previously acknowledged evidence of "significant impairment of [the appellant's] occupational and social activities not

---

[2] After the October 2015 Supplemental Statement of the Case issued, Social Security Administration records, including private medical records, were placed in the appellant's file and he waived consideration by the RO. R. at 3.

represented by the current 10 percent evaluation" and provided no explanation in the decision on appeal as to why that is no longer the case. The Court will not undertake that analysis in the first instance. *See Arneson v. Shinseki*, 24 Vet.App. 379, 389 (2011) (finding prejudice when error "could have altered" the Board's determinations); *see also Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) (stating that "appellate tribunals are not appropriate fora for initial fact finding").

## C. Other Reasons-or-Bases Arguments

Given that the Court is remanding the appellant's extraschedular claim, and because the appellant's additional reasons-or-bases arguments could result in no greater relief, the Court need not address these arguments. *See Mahl v. Principi*, 15 Vet.App. 37, 38 (2001) (per curiam order) ("[I]f the proper remedy is a remand, there is no need to analyze and discuss all the other claimed errors that would result in a remedy no broader than a remand."); *Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order) ("A narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and, of course, before this Court in an appeal, should the Board rule against him."). On remand, the appellant is free to submit additional evidence and argument on the remanded matter, and the Board is required to consider any such relevant evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to the benefit sought); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). Additionally, the Court has held that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). The Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112 (requiring the Secretary to provide for "expeditious treatment" of claims remanded by the Court).

## IV. CONCLUSION

The appellant's motion for oral argument is denied. After consideration of the parties' briefs, supplemental memoranda, and the record, the Board's March 17, 2016, decision denying a disability rating greater than 10% on an extraschedular basis for inguinal hernia repair residuals is VACATED, and the matter is REMANDED for further proceedings consistent with this decision.