Citation Nr: 1730411 
Decision Date: 07/31/17 Archive Date: 08/04/17

DOCKET NO. 10-19 143 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
 in St. Petersburg, Florida


THE ISSUES

1. Entitlement to an increased disability rating for the service-connected back disability, in excess of 10 percent from April 17, 2008 to December 18, 2013, in excess of 20 percent from December 18, 2013 to December 10, 2016, and in excess of 40 percent from December 10, 2016. 

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU). 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

A. Tenney, Associate Counsel 
INTRODUCTION

The Veteran, who is the appellant, had active service from September 1986 to April 1988. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from various rating decision by the RO in St. Petersburg, Florida. A February 2009 rating decision denied a rating excess of 10 percent for the service-connected back disability, an April 2014 rating decision granted a higher 20 percent rating from December 18, 2013, and a March 2017 rating decision granted a 40 percent rating from December 10, 2016, creating the "staged" rating issue on appeal. Accordingly, the Board has recharacterized the rating issue on appeal to accurately reflect the staged ratings assigned. 

This case was previously before the Board in July 2016, where the Board remanded the increased rating issue to obtain potentially outstanding VA treatment (medical) records and to schedule the Veteran for a new VA spinal examination. Subsequently, the outstanding VA treatment records were obtained and the Veteran received a new VA spinal examination in December 2016. A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Failure of the Board to ensure compliance with remand instructions constitutes error and warrants the vacating of a subsequent Board decision. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

Review of the December 2016 VA spinal examination reflects that the examination is adequate for VA rating purposes. While Correia v. McDonald, 28 Vet. App. 158 (2016), held that the final sentence of 38 C.F.R. § 4.59 requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint, the Veteran is already in receipt of a 40 percent rating from the date of the December 2016 VA examination, and a 
40 percent rating is the maximum schedular disability rating available for limitation of motion of the lumbar spine under the General Rating Formula, to include the functional equivalent of limitation of motion. 38 C.F.R. § 4.71a (2016). The Veteran does not contend, and the evidence does not suggest, ankylosis of the thoracolumbar spine. For these reasons, the Board finds that Correia is inapplicable in the instant case, and no further examination is needed. As such, the Board finds the issue on appeal is ripe for adjudication.

The issue of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. For the rating period on appeal from April 17, 2008 to December 18, 2013, the service-connected back disability has been manifested by pain, muscle spasm, and an abnormal gait. 

2. For the rating period on appeal from April 17, 2008 to December 10, 2016, the service-connected back disability did not more nearly approximate forward flexion to 30 degrees or less, favorable ankylosis of the thoracolumbar spine, or incapacitating episodes having a total duration of at least 4 weeks during any 12 month period. 

2. For the rating period on appeal from December 10, 2016, the service-connected back disability did not more nearly approximate ankylosis of the thoracolumbar spine or incapacitating episodes having a total duration of at least 
6 weeks during any 12 month period. 


CONCLUSIONS OF LAW

1. Resolving reasonable doubt in favor of the Veteran, for the rating period on appeal from April 17, 2008 to December 18, 2013, the criteria for a 20 percent rating for the service-connected back disability have been met. 38 U.S.C.A. 
§§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.1, 4.3, 4.7, 4.10, 4.20, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5237, 5243 (2016). 

2. For the rating period on appeal from April 17, 2008 to December 10, 2016, the criteria for a rating in excess of 20 percent for the service-connected back disability have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 
38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.1, 4.3, 4.7, 4.10, 4.20, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5237, 5243 (2016). 

3. For the rating period on appeal from December 10, 2016, the criteria for a rating in excess of 40 percent for the service-connected back disability have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.1, 4.3, 4.7, 4.10, 4.20, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5237, 5243 (2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist 

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duties to notify and assist claimants in substantiating their claims for VA benefits. 
38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). This notice should be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In a claim for increase, the VCAA requirement is generic notice, that is, the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). 

In May 2008, VA issued the Veteran a VCAA notice which informed of the evidence generally needed to support a claim for an increased disability rating, what actions needed to be undertaken, and how VA would assist in developing the claim. The notice was issued to the Veteran prior to the February 2009 rating decision from which the instant appeal arises; therefore, there was no defect with respect to the timing of the VCAA notice. See Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Regarding the duty to assist in this case, the Veteran received VA examinations in April 2010, December 2013, and December 2016. The VA examination reports are of record. To that end, when VA undertakes to either provide an examination or to obtain an opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The VA examination reports reflect that the VA examiners reviewed the record, conducted an in-person examination, and rendered the requested opinions and rationale. 

All relevant documentation, including VA treatment records, has been secured and all relevant facts have been developed. There remains no question as to the substantial completeness of the issue on appeal. 38 U.S.C.A. §§ 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.159, 3.326(a). Any duties imposed on VA, including the duties to assist and to provide notification, have been met as set forth above.

Increased Rating for Back Disability 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) found in 38 C.F.R. Part 4. 
38 U.S.C.A. § 1155. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. 

Where there is a question as to which of two disability ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 
38 C.F.R. § 4.7. It is the defined and consistently applied policy of VA to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3. 

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 
38 C.F.R. § 4.25 (2016). Pyramiding, the rating of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a veteran's service-connected disabilities. 38 C.F.R. § 4.14 (2016). It is possible for a veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes; however, the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

When an unlisted condition is encountered it will be permissible to rate under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous. Conjectural analogies will be avoided, as will the use of analogous ratings for conditions of doubtful diagnosis, or for those not fully supported by clinical and laboratory findings. Nor will ratings assigned to organic diseases and injuries be assigned by analogy to conditions of functional origin. 38 C.F.R. § 4.20.

When evaluating disabilities of the musculoskeletal system, 38 C.F.R. § 4.40 allows for consideration of functional loss due to pain and weakness causing additional disability beyond that reflected on range of motion measurements. DeLuca v. Brown, 8 Vet. App. 202 (1995). Further, 38 C.F.R. § 4.45 provides that consideration also be given to decreased movement, weakened movement, excess fatigability, incoordination, and pain on movement, swelling, and deformity or atrophy of disuse. Painful motion is considered limited motion at the point that pain actually sets in. See VAOPGCPREC 9-98.

With any form of arthritis, painful motion is an important factor of disability, the facial expression, wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to affected joints. Muscle spasm will greatly assist the identification. Sciatic neuritis is not uncommonly caused by arthritis of the spine. The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. Crepitation either in the soft tissues such as the tendons or ligaments, or crepitation within the joint structures should be noted carefully as points of contact which are diseased. Flexion elicits such manifestations. The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint. 38 C.F.R. § 4.59.

In rendering a decision on appeal the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 
39-40 (1994); Gilbert, 1 Vet. App. at 57. Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 
2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

Where an increase in an existing disability rating based on established entitlement to compensation is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). The relevant temporal focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Hart v. Mansfield, 21 Vet. App. 505 (2007).

A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr, 21 Vet. App. 303.

Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of the claims file. Prejean v. West, 13 Vet. App. 444, 448-49 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejecting medical opinions that did not indicate whether the physicians actually examined the veteran, did not provide the extent of any examination, and did not provide any supporting clinical data). The United States Court of Appeals for Veterans Claims (Court) has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence).

Disabilities of the spine are rated under the General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula) for Diagnostic Codes 5235 to 5243, unless 5243 is evaluated under the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes (IVDS Rating Formula). Ratings under the General Rating Formula are made with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease.

The General Rating Formula provides a 10 percent disability rating for forward flexion of the lumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range-of-motion of the lumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is provided for forward flexion of the lumbar spine greater than 30 degrees but not greater than 
60 degrees; or, the combined range-of-motion of the lumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent disability rating is provided for forward flexion of the lumbar spine 30 degrees or less, or favorable ankylosis of the entire lumbar spine, while a 50 percent disability rating is assigned for unfavorable ankylosis of the entire lumbar spine. Finally, a 100 percent disability rating is assigned for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a. 

Note (1) to the rating formula specifies that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, should be separately evaluated under an appropriate diagnostic code.

Note (2) (See also Plate V) provides that, for VA compensation purposes, normal forward flexion of the lumbar spine is zero to 90 degrees, extension is zero to 
30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range-of-motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range-of-motion of the lumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range-of-motion.

Note (3) provides that, in exceptional cases, an examiner may state that because of age, body habitus, neurologic disease, or other factors not the result of disease or injury of the spine, the range-of-motion of the spine in a particular individual should be considered normal for that individual, even though it does not conform to the normal range-of-motion stated in Note (2). Provided that the examiner supplies an explanation, the examiner's assessment that the range-of-motion is normal for that individual will be accepted.

Note (4) instructs to round each range-of-motion measurement to the nearest five degrees.

Note (5) provides that, for VA compensation purposes, unfavorable ankylosis is a condition in which the entire lumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. 

The diagnostic codes for rating disabilities of the spine are as follows: 5235 Vertebral fracture or dislocation; 5236 Sacroiliac injury and weakness; 5237 Lumbosacral or cervical strain; 5238 Spinal stenosis; 5239 Spondylolisthesis or segmental instability;
5240 Ankylosing spondylitis; 5241 Spinal fusion; 5242 Degenerative arthritis of the spine (see also DC 5003); 5243 Intervertebral disc syndrome.

The IVDS Rating Formula provides a 10 percent disability rating for IVDS with incapacitating episodes having a total duration of at least one week but less than 
2 weeks during the past 12 months; a 20 percent disability rating for IVDS with incapacitating episodes having a total duration of at least 2 weeks but less than 
4 weeks during the past 12 months; a 40 percent disability rating for IVDS with incapacitating episodes having a total duration of at least 4 weeks but less than 
6 weeks during the past 12 months; and a 60 percent disability rating for IVDS with incapacitating episodes having a total duration of at least 6 weeks during the past 
12 months. An incapacitating episode is defined as a period of acute signs and symptoms due to IVDS that required bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a.

The Veteran contends generally that the service-connected back disability has been manifested by more severe symptoms and impairment than contemplated by the 
10 percent disability rating assigned from April 17, 2008 to December 18, 2013, the 20 percent disability rating assigned from December 18, 2013 to December 10, 2016, and the 40 percent disability rating assigned December 10, 2016. Specifically, an April 2008 statement reflects the Veteran wrote that symptoms of back pain had worsened in severity. A June 2009 statement reflects the Veteran wrote that he was treated for back pain from 1995 to 2008 while he was incarcerated. 

After a review of all the evidence, lay and medical, and after resolving reasonable doubt in favor of the Veteran, the Board finds that, for the increased rating period on appeal from April 17, 2008 (date of claim) to December 18, 2013, the service-connected back disability has been manifested by pain, muscle spasm, and an abnormal gait. Findings from the April 2010 VA examination, and history and findings in the numerous VA and private treatment records, reflect treatment for chronic back pain, muscle spasm, and an abnormal gait. These findings, as well as the Veteran's self-reported symptoms, more nearly approximate the criteria for a 
20 percent rating under the under the General Rating Formula for Diseases and Injuries of the Spine for the symptoms and level of impairment actually demonstrated by the back disability for the rating period from April 17, 2008 to December 18, 2013. Diagnostic Code 5242 warrants a 20 percent rating for muscle spasm or guarding severe enough to result in an abnormal gait. In this case, as noted in the April 2010 VA examination report and the May 2012 VA treatment record, the back disability has manifested as muscle spasms and an abnormal gait. See 38 C.F.R. § 4.71a, General Rating Formula for Disease and Injuries of the Spine (DCs 5235 to 5243) (assigning a 20 percent rating, in pertinent part, for abnormal gait).
 
Because the Board is granting a 20 percent disability rating for the back disability for the rating period from April 17, 2008 to December 18, 2013, and the Veteran is already in receipt of a 20 percent rating for the rating period from December 18, 2013 to December 10, 2016, the Board will now evaluate whether a higher rating than 20 percent rating is warranted for the increased rating period from April 17, 2008 to December 10, 2016. 

After a review of all the evidence, lay and medical, the Board also finds that, for the increased rating period on appeal from April 17, 2008 to December 10, 2016, the service-connected back disability did not more nearly approximate forward flexion to 30 degrees or less, favorable ankylosis of the thoracolumbar spine, or incapacitating episodes having a total duration of at least 4 weeks during any 
12 month period. A disability rating of 20 percent or higher would only be warranted for forward flexion more closely approximating less than 30 degrees, or favorable ankylosis of the entire thoracolumbar spine, and/or incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during a 12 month period, none of which is present here. 38 C.F.R. §§ 4.3, 4.7. Specifically, the December 2013 VA examination report reflects forward flexion to 60 degrees with no objective evidence of painful motion, and the December 2013 VA examiner did not discern IVDS. See December 2013 VA examination report. 

Further, while the Veteran has asserted that the December 2013 VA examiner did not use a goniometer, the December 2013 VA examination report shows specific numerical measurements of lumbar spine forward flexion, extension, right and left lateral flexion, and right and left lateral rotation, including consideration of orthopedic factors. The Board presumes that the examiner is competent to report accurate range of motion findings. See Cox v. Nicholson, 20 Vet. App. 563, 
569 (2007). In light of the clear findings reported by the examiner, the Board finds that the Veteran's assertion that a goniometer was not used does not render the December 2013 examination inadequate. The purpose of a goniometer is to assist in more precise measurements of motion. The evidence does not demonstrate that the actual recorded history or findings in the December 2013 VA examination report, including ranges of motion as recorded, are inaccurate, imprecise, or would have been different had a goniometer been used. In addition, the December 2013 VA examiner specifically assessed that the Veteran displayed "poor effort during the examination," and concluded that the December 2013 VA examination yielded unreliable and inconsistent results. 

Next, after a review of all the evidence, lay and medical, the Board also finds that, for the rating period on appeal from December 10, 2016, the service-connected back disability did not more nearly approximate ankylosis of the thoracolumbar spine or incapacitating episodes having a total duration of at least 6 weeks during any 12 month period. First, the evidence of record reflects no ankylosis of the spine, and a disability rating in excess of 40 percent is not warranted on that basis. Second, as to incapacitating episodes due to IVDS, none of the evidence received by VA has conveyed that the Veteran ever had incapacitating episodes with a total duration of six weeks or more during any 12 month period on appeal. The December 2016 VA examination report reflects forward flexion to 30 degrees, including as due to pain, and incapacitating episodes having a total duration of at least one week but less than two weeks during a 12 month period. As such, a disability rating in excess of 40 percent due to incapacitating episodes is not warranted. For these reasons, the Board finds that the preponderance of the evidence of record is against a finding that a disability rating in excess of 40 percent is warranted at any point during the rating period on appeal from December 10, 2016. 38 U.S.C.A. § 5107(b); 
38 C.F.R. §§ 4.3, 4.7. 

The Board has also considered whether an increased disability rating was warranted at any point during the one year period prior to April 17, 2008, the date of claim for increase. See Hart, 21 Vet. App. 505. The evidence of record does not reflect that the Veteran was entitled to an increased disability rating for the service-connected lumbar spine disorder during the one year period prior to the date of claim; as such, the appropriate effective date for the increased disability rating of 20 percent is April 17, 2008, the date of increased rating claim. See 38 C.F.R. § 3.400(o) (2016); Gaston v. Shinseki, 605 F.3d 979, 984 (Fed. Cir. 2010) (explaining the legislative history of 38 U.S.C.A. § 5110(b)(2) was to provide veterans a one-year grace period for filing a claim following an increase in the severity of a service-connected disability). 

Finally, the Board has also considered whether the Veteran is entitled to a separate compensable disability rating for any objective neurologic, or other, disabilities related to the service-connected low back disability. The March 2017 rating decision granted a separate 10 percent rating for radiculopathy of the right lower extremity, and, to date, the Veteran has not entered a notice of disagreement as to the rating or effective date assigned; therefore, the issue of a separate rating for neurologic abnormalities associated with the service-connected back disability is not before the Board. 

Extraschedular Referral Consideration

The Board had also considered whether an extraschedular rating is warranted for the service-connected back disability. Ratings shall be based as far as practicable upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular ratings are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extraschedular rating commensurate with the average earning capacity impairment due exclusively to the service connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. 
§ 3.321(b)(1).
 
The Court has clarified that there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. Initially, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability are inadequate. See Doucette v. Shulkin, 28 Vet. App. 366 (2017) (holding that either the veteran must assert that a schedular rating is inadequate or the evidence must present exceptional or unusual circumstances). Second, if the schedular rating does not contemplate the veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the veteran's disability picture requires the assignment of an extraschedular rating. Thun v. Peake, 22 Vet. App. 111 (2008). However, the Board gives no deference to the Director's adjudication and the Board is permitted to exercise jurisdiction over the question of entitlement to an extraschedular rating whether or not the Director of the Compensation and Pension Service finds an extraschedular rating warranted. See Kuppamala v. McDonald, 
27 Vet. App. 447 (2015) (applying principles announced in Wages to 38 C.F.R. 
§ 3.321(b) extraschedular adjudication, namely, Director of C&P decision is not evidence, and is not a policy decision, but is simply a decision or adjudication that is adopted by the RO and reviewed de novo by the Board); Cf. Wages v. McDonald, 27 Vet. App. 233 (2015) (holding that a decision of TDIU under 38 C.F.R. 
§ 4.16(b) by the Director of C&P is not evidence, and is not a policy decision, but is simply a decision or adjudication that is adopted by the RO and reviewed de novo by the Board).

With respect to the first prong of Thun, the back disability has been manifested primarily as painful limitation of motion with flare-ups, stiffness, and difficulty sitting, standing, bending over, driving, and engaging in various other physical activities. As discussed above, painful limitation of motion with painful flare-ups and abnormal gait are specifically considered under the schedular rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca, 8 Vet. App. 202 (additional limitation of motion due to orthopedic factors are incorporated as part of the schedular rating criteria). The schedular rating criteria also allow for ratings based upon incapacitating episodes, such as those caused by increased pain due to flare-ups. See 38 C.F.R. § 4.71a.

Further, any functional limitations imposed by the back disability, which here includes stiffness and difficulty sitting, standing, bending over, driving, and engaging in various other physical activities, are primarily the result of the back pain, including flare-ups, caused by engaging in these activities; therefore, consistent with DeLuca, the effects of the Veteran's back pain and associated limitations on his occupational and daily life are specifically contemplated by the schedular criteria. The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 38 U.S.C.A. § 1155. "Generally, the degrees of disability specified [in the rating schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." 38 C.F.R. § 4.1 (2016). In this case, the problems reported by the Veteran are specifically contemplated by the criteria discussed above, including the functional limitations and the effects on daily life. 

According to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate.

Comparing the Veteran's disability level and symptomatology of the back disability to the rating schedule, the degree of disability throughout the entire period under consideration is contemplated by the rating schedule; therefore, the assigned ratings are adequate. Absent any exceptional factors associated with the lumbar spine, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 
9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). The issue of entitlement to a TDIU is addressed below.


ORDER

An increased disability rating for the back disability of 20 percent for the period from April 17, 2008 to December 18, 2013 is granted; a disability rating in excess of 20 percent from April 17, 2008 to December 10, 2016, and in excess of 40 percent from December 10, 2016, is denied. 


REMAND

TDIU

A claim for a TDIU is part of a rating issue when such claim is raised by the record during the rating period. Rice v. Shinseki, 22 Vet. App. 447 (2009). The Veteran's service-connected disabilities include the back disability rated as 40 percent disabling and a right lower extremity radiculopathy rated as 10 percent disabling. A December 2016 VA examination report reflects the Veteran reported that he had stopped working in October 2015 as a monitoring attendant for a private company. The December 2016 VA examiner opined that the service-connected back disability impacted the ability to work, to include difficulties climbing, lifting, or working overhead. 

The Board finds that the evidence has reasonably raised a claim for a TDIU in conjunction with the increased rating issue decided herein; however, a remand is required prior to adjudication of the claim for a TDIU because the Veteran has not been provided adequate VCAA notice regarding substantiation of TDIU, nor has the AOJ adjudicated TDIU in the first instance. 

Accordingly, the issue of a TDIU is REMANDED for the following action:

1. The AOJ should send the Veteran VCAA notice that addresses a claim for a TDIU.

2. The AOJ should request the Veteran to complete an individual unemployability claim form, Veteran's Application for Increased Compensation Based on Unemployability (VA Form 21-8940). 

3. After all available evidence has been associated with the record, the AOJ should review the evidence and determine if further development is warranted for TDIU. The AOJ should take any additional development as deemed necessary.

3. After all development has been completed, the AOJ should adjudicate the issue of entitlement to a TDIU based on the evidence of record. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that 

are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 
7112 (West 2014).





______________________________________________
J. Parker 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs