﻿Citation Nr: AXXXXXXXX
Decision Date: 11/27/19 Archive Date: 11/27/19

DOCKET NO. 190812-19280
DATE: November 27, 2019

ORDER

Entitlement to an evaluation in excess of 50 percent for migraine headaches is denied.

Entitlement to total disability rating based upon individual unemployability (TDIU) to include on an extraschedular basis is denied.

FINDINGS OF FACT

1. The Veteran’s service-connected migraine headaches are currently evaluated at 50 percent, the maximum schedular rating available.

2. The Veteran did not meet the schedular criteria for a TDIU, and the preponderance of the evidence is against a finding that the Veteran’s service-connected disabilities does not present an exceptional or unusual disability picture productive of marked interference with employment or frequent periods of hospitalization.

CONCLUSIONS OF LAW

1. The criteria for entitlement to a disability rating in excess of 50 percent for service-connected migraine headaches have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. § 4.124, Diagnostic Code 8100. 

2. The criteria for entitlement to a TDIU to include on an extraschedular basis have not been met. 38 U.S.C. § 1155; 38 C.F.R. § § 3.340, 3.341, 4.16, 4.19.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program. 

In December 2018, the Veteran submitted a RAMP election form, selecting the Higher-Level Review lane for his appeal. Accordingly, the February 2019 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Evidence was added to the claims file during a period of time when new evidence was not allowed. Therefore, the Board may not consider this evidence. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

The Veteran served in active duty with the Navy from April 1964 to May 1965. This matter is on appeal from a September 2016 and November 2017 rating decision. The Veteran did not request a hearing.

In February 2018, the RO requested the Director of Compensation Service give an opinion for TDIU on an extraschedular basis in relation to the Veteran’s service-connected migraine headaches. In March 2018, the Director of Compensation Service issued an advisory opinion.

This appeal has been advanced on the Board’s docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C. § 7107(a)(2).

Increased Rating

In general, disability ratings are determined by applying the VA’s Schedule for Rating Disabilities (Rating Schedule). See 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can practicably be determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. See 38 U.S.C. § 1155; 38 C.F.R. § 4.1. 

The percentage ratings contained in the Rating Schedule represent, as far as can practically be determined, the average impairment in earning capacity resulting from such disease or injury and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. VA has a duty to acknowledge and consider all regulations which are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusion. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3. 

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, the Board must also consider staged ratings. Staged ratings are not appropriate in this matter as the evidence establishes that the Veteran’s service-connected disability largely remained stable and constant. Hart v. Mansfield, 21 Vet. App. 505, 509–10 (2007). 

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other. Esteban v. Brown, 6 Vet. App. 259, 262 (1994); 38 C.F.R. § 4.14. 

The Veteran is competent to report symptoms and experiences observable by his senses. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); 38 C.F.R. § 3.159(a).

Migraine Headaches

The Veteran is currently rated at 50 percent disabling for migraine headaches under Diagnostic Code 8100. 

Under 38 C.F.R. § 4.124a, Diagnostic Code 8100, a noncompensable evaluation is warranted for migraines with less frequent attacks; a 10 percent evaluation is warranted for migraines with characteristic prostrating attacks averaging one in 2 months over the last several months; a 30 percent evaluation is appropriate in cases of characteristic prostrating attacks occurring on an average of once a month over the last several months; and, a 50 percent rating is appropriate with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. 

Significantly, the use of the conjunctive “and” in a statutory provision means that all of the conditions listed in the provision must be met. See Melson v. Derwinski, 1 Vet. App. 334 (1991); cf. Johnson v. Brown, 7 Vet. App. 95 (1994) (holding that only one disjunctive “or” requirement must be met in order for an increased rating to be assigned). Here, because of the successive nature of the rating criteria, such that the evaluation for each higher disability rating includes the criteria of each lower disability rating (at least what could be considered most of them), each of the criteria in the 50 percent rating must be met in order to warrant such a rating. The Board notes that § 4.7 is not applicable to DCs that apply successive rating criteria, such as DC 8100. It is successive because the criteria of each lower disability rating are included in the higher disability rating. 

Though the Diagnostic Code does not provide a definition for “prostrating,” prostration is defined as “extreme exhaustion or powerlessness.” Dorland’s Illustrated Medical Dictionary 1554 (31st ed. 2007). 

Additionally, the term “productive of severe economic inadaptability” is also not defined in veterans’ law. However, the Court has stated that this term is not synonymous with being completely unable to work and VA has conceded that the phrase “productive of” could be read to mean either “producing” or “capable of producing” economic inadaptability. See Pierce v. Principi, 18 Vet. App. 440, 446–47 (2004) (stating that nothing in DC 8100 requires that the claimant be completely unable to work in order to qualify for a 50% rating”).

The Veteran was afforded VA examinations in June 2015, February 2016, and December 2017.

Medical records in June 2009 and August 2012 note the Veteran requested medication for treatment of his headaches; the Veteran stated that he only took this medication rarely.

In the Veteran’s June 2015 examination, the Veteran reported missing work due to headaches during the 1970s and that his headaches remained “debilitating” for decades after separation. The Veteran stated that his headaches worsened after undergoing carotid surgery. The Veteran reported having 3 to 4 headaches in the past 12 months; he stated that it started with a visual aura of a small blind spot which grows until he loses vision, then followed by head pain within 30 to 60 minutes that lasts 1 to 2 days. The Veteran described experiencing throbbing temporal and stead occipital pain.

The examiner found the Veteran with headache pain symptoms of: constant head pain; pulsating or throbbing head pain; and pain on both sides of the head. The examiner found associated non-headache symptoms of nausea, vomiting, sensitivity to light and changes in vision. The examiner found the Veteran’s duration of typical head pain lasted less than 1 day and the pain was located on both sides of the head.

The examiner found the Veteran had characteristic prostrating attacks of migraine and non-migraine headache pain at a frequency of once every month. The examiner did not find the Veteran had very prostrating and prolonged attacks of migraine or non-migraine pain productive of severe economic inadaptability.

The examiner found the Veteran’s disability impacted his ability to work. The examiner found the Veteran’s headaches made him unable to see desk work, drive, perform any physical exertion tasks, or concentrate on mental tasks due to headache pain. The examiner found the Veteran was intolerant of brightly lit environments during headaches.

In a July 2015 medical record, the Veteran stated that his headaches had not changed in frequency or nature. In September 2015 the Veteran complained his headaches were getting worse but did not provide details on how they were worsening.

In November 2015 the Veteran reported his headaches were becoming more frequency and his episodes of blindness were becoming longer. The Veteran stated that he previously believed that he could get by without using medication to treat his symptoms; he also stated that some medication he tried were either ineffective or his stomach was unable to tolerate its side-effects. The Veteran reported headaches occurring 3 to 4 times a month which he also stated occurred “sometimes more or less frequently.”

At the Veteran’s February 2016 examination, the Veteran reported his headaches continued at the same degree of frequency and severity. The Veteran stated that he experienced headaches occurring anywhere from 3 to 4 times to 6 to 8 times per month. The Veteran stated there was no change in aura, duration, intensity and location of headache pain.

The examiner found the Veteran with headache pain symptoms of: constant head pain; pulsating or throbbing head pain; and pain on both sides of the head that worsened with physical exertion. The examiner found associated non-headache symptoms of nausea, vomiting, sensitivity to light and changes in vision. The examiner found the Veteran’s duration of typical head pain lasted less than 1 day and the pain was located on both sides of the head.

The examiner found the Veteran had characteristic prostrating attacks of migraine and non-migraine headache pain at a frequency of once every month. The examiner found the Veteran had very prostrating and prolonged attacks of migraine or non-migraine pain productive of severe economic inadaptability.

The examiner found the Veteran’s disability impacted his ability to work. The examiner noted the Veteran worked for his friend’s business answering phones and would have to stop when his headache pain was at its worst.

In April 2016, the Veteran reported no change in headaches. In May 2016, the Veteran reported experiencing headaches 4 to 6 times a month lasting up to 1 day. 

In an April 2017 visit to the VA neurology clinic, the Veteran reported having only 5 migraines since January which he considered “good control” although noting it sometimes interrupts his golfing. The Veteran described experiencing an aura of light disturbance lasting 30 to 40 minutes prior to his headache and then his headache would last the rest of the day, requiring him to lie down and rest.

In June 2017, the Veteran complained of light-headedness with physical exertion but denied persistent severe headaches with changes in vision.

In an October 2017 visit to the VA neurology clinic, the physician found the Veteran’s migraine situation had improved from the last visit to the clinic. The physician found the Veteran experienced full-blown migraines up to 2 times a month and the Veteran was noted to be “OK with this and is satisfied with the situation.”

In a November 2017, the Veteran reported more issues with migraine headaches. The Veteran stated that the medication prescribed to treat his headaches affected his job and that eventually he lost it in September 2017. The Veteran reported experiencing blindness 30 minutes to an hour before his headaches.

In a submitted November 2017 private physician statement, the physician stated the Veteran is unable to perform his job duties because of symptoms of blindness and headaches during episodes of migraine with aura. The physician stated the Veteran is “motivated to work but is limited enough by his symptoms” that forced the Veteran to leave often and eventually resulted in his loss of employment.

The Veteran was afforded a December 2017 VA examination. The Veteran stated that “everything is pretty much the same as far as the headaches.” The Veteran reported that in July and August 2017 he had headaches occurring weekly which caused him to leave work early, call off work or leave in the middle of company meetings. The Veteran stated that he was eventually fired from his job because of work disruptions caused by his absence.

The Veteran reported that in recent months he suffered from full blown migraine headaches occurring once a week that last all day. The Veteran described having a visual aura lasting for an hour followed by steady and throbbing head pain that radiates along the sides of his head accompanied by nausea. The Veteran stated that he has to pull over and wait until the aura resolves if headaches occur while driving; then the Veteran drives home and lays down until his headache pain resolves.

The examiner found the Veteran with headache pain symptoms of: constant head pain; pulsating or throbbing head pain; pain on both sides of the head; and pain that worsens with physical activity. The examiner found associated non-headache symptoms of nausea and changes in vision. The examiner found the Veteran’s duration of typical head pain lasted less than 1 day and the pain was located on both sides of the head.

The examiner found the Veteran had characteristic prostrating attacks of migraine and non-migraine headache pain at a frequency of once every month; however, the Veteran later in the examination states that such incapacitating migraines occur once per week. The examiner did not find the Veteran had very prostrating and prolonged attacks of migraine or non-migraine pain productive of severe economic inadaptability.

The examiner noted there was normal neurologic findings, including examination of the Veteran’s cranial nerves, central, and peripheral nerves. The Veteran was observed with normal gait.

The examiner noted in review of the Veteran’s medical records that in an October 2017 neurology clinic visit, the Veteran reported that his situation had improved from the previous visit. The Veteran reported migraines occurring twice per month and the treating physician notes the Veteran stated he was “doing OK and satisfied with the situation.” The examiner also notes that VA primary care progress notes from July 2017 to October 2017 did not record any complaints of worsening migraine headaches.

The examiner found the Veteran’s disability impacted his ability to work. The examiner found that during the Veteran’s headaches he was unable to concentrate on mental work or do any strenuous physical work and these headaches also resulted in frequent absences from work.

In a submitted July 2018 private physician statement, the physician stated the Veteran reported experiencing headaches 2 to 3 times per week with near-complete vision loss for 30 to 45 minutes prior to his migraine headaches. The physician stated the Veteran’s vision loss was incapacitating and rendered the Veteran unemployable. However, the Board notes the physician was unable to review any prior medical records and based his findings on the Veteran’s reported symptoms. As such, the Board affords this statement less probative weight.

The Board acknowledges the Veteran’s statements regarding his symptoms for migraines and headaches. However, while the Veteran is competent to report his symptoms of his disabilities, he is not competent to opine on matters requiring medical knowledge, such as determining the severity of his medical conditions based on the criteria above. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Therefore, the Board places more probative weight on the medical evidence of record.

After review of the evidence, the Board finds that an increased evaluation in excess of 50 percent for the Veteran’s service-connected migraine headaches is not warranted. The Veteran’s 50 percent evaluation under Diagnostic Code 8100 is already the highest schedular rating available. 38 U.S.C. § 1155, 5107; 38 C.F.R. §§ 3.321(b)(1), 4.124, DC 8100. As the Veteran is already in receipt of the highest schedular rating available and there is no expressly raised contention, or one reasonably raised by the record, a higher schedular rating is not warranted. Under these circumstances, the disposition of this claim is based on the law, and not the facts of the case, and the claim for an increased schedular rating must be denied based on a lack of entitlement under the law. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

The Board has considered whether an extraschedular rating is warranted for the service-connected migraine headaches. “The determination of whether a claimant is entitled to an extraschedular rating under 38 C.F.R. § 3.321 (b) is a three-step inquiry... The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate.” Thun v. Peake, 22 Vet. App. 111, 115 (2008). “Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant’s service-connected disability with the established criteria found in the rating schedule for that disability...[I]f the criteria reasonably describe the claimant’s disability level and symptomatology, then the claimant’s disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required.” Thun at 115.

“However, in the second step of the inquiry, if the schedular evaluation does not contemplate the claimant’s level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant’s exceptional disability picture exhibits other related factors such as those provided by the regulation as ‘governing norms.’ 38 C.F.R. § 3.321 (b)(1) (related factors include ‘marked interference with employment’ and ‘frequent periods of hospitalization’). When an analysis of the first two steps reveals that the rating schedule is inadequate to evaluate a claimant’s disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant’s disability picture requires the assignment of an extraschedular rating.” Thun, supra.

Here, in a March 2018 decision, the Director of Compensation Service found that the Veteran’s headache symptoms were contemplated by the schedular rating criteria and thus an extraschedular evaluation was not warranted.

However, the Board gives no deference to the Director’s adjudication and the Board is permitted to exercise jurisdiction over the question of entitlement to an extraschedular rating whether or not the Director of the Compensation finds an extraschedular rating warranted. See Kuppamala v. McDonald, 27 Vet. App. 447 (2015) (applying principles announced in Wages to 38 C.F.R. § 3.321 (b) extraschedular adjudication, namely, Director of C&P decision is not evidence, and is not a policy decision, but is simply a decision or adjudication that is adopted by the RO and reviewed de novo by the Board); Cf. Wages v. McDonald, 27 Vet. App. 233 (2015) (holding that a decision of TDIU under 38 C.F.R. § 4.16 (b) by the Director of C&P is not evidence, and is not a policy decision, but is simply a decision or adjudication that is adopted by the RO and reviewed de novo by the Board). 

With respect to the first prong of Thun, the Board finds that all the symptomatology and functional impairment caused by the migraine headaches are specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. Diagnostic Code 8100 provides specific ratings based on the frequency and duration of prostrating attacks, and economic inadaptability due to headaches and related attacks. 

In this case, as reported in the VA examination reports discussed above, the Veteran’s migraine headaches are manifested by symptoms including pain, nausea, vomiting, sensitivity to light, sensitivity to sound, sensitivity to smells, and changes in vision.

The evidence shows the Veteran reported prostrating attacks occurring once a week requiring frequent absences from work due to severe headaches and impacting the Veteran’s ability to concentrate or perform strenuous physical work during headaches. 

Such symptoms are specifically included in the disability rating analysis as to whether the migraines are prostrating and/or cause economic inadaptability; therefore, all of the Veteran’s headache symptomatology is specifically considered by the VA migraine headache rating criteria. 38 C.F.R. § 3.321 (b)(1), Diagnostic Code 8100.

Accordingly, the evidence shows that the Veteran’s headache disability interferes with his employment; however, the functional restrictions the Veteran faces are contemplated by his assigned schedular evaluation. The record does not show frequent hospitalizations as a result of his headaches. In sum, the Veteran’s headache symptoms do not show an exceptional or unusual disability picture manifested by marked interference with employment or frequent periods of hospitalization to warrant an extra-schedular evaluation.

The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 38 U.S.C. § 1155. “Generally, the degrees of disability specified [in the rating schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability.” 38 C.F.R. § 4.1 (2018). In this case, the problems reported by the Veteran are specifically contemplated by the schedular rating criteria discussed above. In the absence of exceptional factors associated with the service-connected migraine headaches, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321 (b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

As such, the Board finds the credible and probative evidence is against a finding that an evaluation in excess of 50 percent to include on an extraschedular basis is not warranted.

Total Disability Rating Based on Individual Unemployability (TDIU)

VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that the Veteran is precluded from obtaining or maintaining any substantially gainful employment consistent with his education and occupational experience, by reason of his service-connected disabilities. 38 C.F.R. § § 3.340, 3.341, 4.16.

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that the Veteran meets the schedular requirements. 38 C.F.R. § 3.340. 

Specifically, if there is only one such disability, this disability shall be ratable at 60 percent or more; if there are two or more disabilities, there shall be at least one disability that is ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § § 3.340, 3.341, 4.16(a). 

For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following disabilities will be considered as one disability: (1) Disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war. 38 C.F.R. § 4.16(a).

The central inquiry is, “whether the veteran’s service-connected disabilities alone are of sufficient severity to produce unemployability.” Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993).

In determining whether unemployability exists, consideration may be given to the Veteran’s level of education, special training, and previous work experience, but not to his age or to any impairment caused by non-service-connected disabilities. 38 C.F.R. § § 3.341, 4.16, 4.19. 

“Substantially gainful employment” is that employment “which is ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the veteran resides.” Moore v. Derwinski, 1 Vet. App. 356, 358 (1991). “Marginal employment shall not be considered substantially gainful employment.” 38 C.F.R. § 4.16(a).

The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough; the ultimate question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he or she can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993).

The Veteran asserts that his service-connected disabilities render him completely unable to work.

The Veteran is currently service connected for migraine headaches evaluated at 50 percent, bilateral tinnitus at 10 percent, and right ear hearing loss at a noncompensable evaluation. The combined evaluation of the Veteran’s disabilities is at 60 percent from January 8, 2016.

Here, the Veteran’s service-connected disabilities have not met the schedular criteria during the appeal period since the combined rating is at 60 percent. Nevertheless, even when the percentage requirements of 38 C.F.R. § 4.16 (a) are not met, individual unemployability benefits may be granted on an extraschedular basis in exceptional cases when the veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disability. 38 C.F.R. § 4.16 (b).

Even when the criteria under 38 C.F.R. § 4.16 (a) are not met, entitlement to a TDIU on an extraschedular basis may be considered when the Veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. § 4.16 (b). The Board does not have the authority to assign an extraschedular TDIU in the first instance. Bowling v. Principi, 15 Vet. App. 1 (2001). Rating boards will refer to the Director of the Compensation Service for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities but who fail to meet the percentage requirements set forth in 38 C.F.R. § 4.16 (a).

VA referred the appeal to the Director of Compensation for administrative review for extra-schedular consideration. In March 2018, the Director of Compensation issued an advisory opinion. The Director first noted the Veteran’s service-connected disabilities of migraines, bilateral tinnitus and right ear hearing loss. The Director noted that in the most recent VA examination in 2017 the examiner did not state the Veteran was unable to work due to migraines. The Director noted upon review of the medical record that there were no hospitalizations or emergency room visits for migraines in the past two years. A record of a June 2017 hospitalization was for a nonservice-connected condition. The Director noted that the medical record shows frequent treatment, but few visits related to migraine treatment; the records show the Veteran’s migraines have been moderately controlled by medication. The Director also noted the evidence does not show any functional deficits secondary to tinnitus or right ear hearing loss.

After review of the evidence the Director found there was no unusual or exceptional disability pattern demonstrate to render the current application of the regular rating criteria as impractical. The Director opined the record did not demonstrate any symptomatology of the Veteran’s migraines, tinnitus or right ear hearing loss that is not wholly contemplated by the criteria used to assign his current evaluation. As such, the Director did not find that entitlement to TDIU on an extra-schedular basis for the Veteran’s migraines was warranted.

As discussed above, in adjudicating this question, the Board is permitted to exercise jurisdiction over the question and gives no deference to Director’s adjudication. See Kuppamala v. McDonald, 27 Vet. App. 447 (2015).

In the Veteran’s June 2015 examination for migraines, the examiner found the Veteran’s disability impacted his ability to work. The examiner found the Veteran’s headaches made him unable to see desk work, drive, perform any physical exertion tasks, or concentrate on mental tasks due to headache pain. The examiner found the Veteran was intolerant of brightly lit environments during headaches. The examiner did not opine the Veteran was completely unable to work.

In the Veteran’s February 2016 examination for migraines, the examiner found the Veteran’s disability impacted his ability to work. The examiner noted the Veteran worked for his friend’s business answering phones and would have to stop when his headache pain was at its worst. 

In a submitted November 2017 TDIU application, the Veteran stated that “due to medication and severity of service-connected migraines, I am unable to work.” The Veteran listed his most recent occupation as a consultant with a roofing company and states he became too disabled to work in August 2017.

In a submitted November 2017 private physician statement, the physician stated the Veteran is unable to perform his job duties due to blindness and headaches during episodes of migraine with aura. The physician also stated the Veteran is motivated to work however his symptoms limited his ability and eventually resulted in his loss of employment.

In the Veteran’s December 2017 examination for migraines, the examiner found the Veteran’s disability impacted his ability to work. The examiner found that during the Veteran’s headaches he was unable to concentrate on mental work or do any strenuous physical work and these headaches also resulted in frequent absences from work. 

In a February 2018 TDIU application, the Veteran updated his employment history to include working part-time self-employed commission-only sales from March 2013 to December 2015. The Veteran reported working for the roofing company from January to December 2016 and from May to September 2017. The Veteran submitted a statement asserting that he lost time and eventually his most recent job due to migraines and aura.

In a submitted July 2018 private physician statement, the physician stated the Veteran reported he has lost several jobs and was unable to continue or maintain a job because of vision loss related to his migraines. The physician found the Veteran’s history was “believable and consistent” with other patients he had seen with migraine auras producing vision loss. The physician opined the vision loss is incapacitating, and such loss of vision spells “may make him unemployable.” However, the Board notes the physician also stated that this was the first time he has seen the Veteran and he was not able to review prior medical records; therefore, the information in the physician’s statement is based upon information provided by the Veteran. In addition, the Veteran’s statement of losing several jobs conflicted with his reported work history to show only self-employment and as a roofing consultant. As such, the Board affords this statement little probative weight. 

After consideration of the medical and lay evidence of record, the Board finds that the preponderance of record does not show that TDIU on an extraschedular basis is warranted for the Veteran’s service-connected disabilities.

The Board acknowledges the Veteran’s statements and contentions of his unemployability. However, the Board recognizes that a “combined-effects medical examination report or opinion” is not required to adjudicate a TDIU claim. See Geib v. Shinseki, 733 F.3d 1350 (Fed. Cir. 2013); Floore v. Shinseki, 26 Vet. App. 376 (2013). The ultimate responsibility for a TDIU determination is a factual rather than a medical question and is an adjudicative determination made by the Board or the AOJ. Geib, 733 F.3d at 1354 (citing 38 C.F.R. § 4.16 (a)).

Here, the central inquiry is whether the Veteran’s service-connected disabilities, alone, are of sufficient severity to preclude him from obtaining and maintaining all forms of substantially gainful employment. See Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). 

The Board acknowledges the Veteran experiences limitations as a result of his service-connected disabilities; however, the Board finds the totality of the evidence weighs against the claim. The June 2015, February 2016 and December 2017 VA examiners did not opine that the Veteran’s migraines precluded him from employment. Although the Veteran’s symptoms included absences from work and inability to concentrate or perform strenuous physical tasks, the record also shows the Veteran was able to maintain work throughout the appeal period until his reported termination in September 2017. While VA examiners did find that the Veteran’s symptoms included vision and driving impairment, the Veteran also indicated that he was able to manage these symptoms and did not state that these impairments prevented him from doing his work. The medical record also indicates the Veteran’s motivation to continue working despite the limitation of his symptoms.

While the Board does not doubt that the Veteran’s service-connected disabilities had a significant impact on his employability, the weight of the evidence does not support his contention that his service-connected disabilities were of such severity so as to preclude his participation in any form of substantially gainful employment for this period.

Accordingly, the Board finds the evidence does not reflect that the Veteran is unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities. As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not applicable, and the claim is denied. See 38 U.S.C. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

 

MICHAEL LANE

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Yang, Attorney-Advisor

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.